[Civ. Nos. 60258, 60259. Second Dist., Div. One. Dec. 31, 1981.]

In re MICHAEL S., a Minor et al.
LOS ANGELES COUNTY DEPARTMENT OF PUBLIC SOCIAL
SERVICES, Plaintiff and Respondent, v.
DON S., Defendant and Appellant.

**COUNSEL**

Mary J. Madsen, under appointment by the Court of Appeal, for Defendant and Appellant.

John H. Larson, County Counsel, Larry D. Cory, James M. Owens and David F. Skjeie, Deputy County Counsel, for Plaintiff and Respondent.

OPINION

TUCKER, J.*—

PROCEDURAL HISTORY

*Case Nos. J910124-910128 (Tamara, Le Ann, Jon, Robert and Melissa)*

On April 18, 1978, petitions were filed with regard to minors Tamara, Le Ann, Jon, Robert and Melissa S. pursuant to section 300 of the Welfare and Institutions Code, alleging various acts of sexual abuse and further alleging that their home was unfit by virtue of these alleged acts.

On December 15, 1978, the children were declared dependent children of the juvenile court and a finding was made that it would be detrimental for them to remain in their home. The minors were ordered suitably placed, except that minor Melissa might remain in the home of the mother on a 90-day trial basis. The matter was continued for progress report as to minor Melissa and for annual review. The court further ordered no physical contact by the father with the minors except through the department of public social services.

On March 20, 1980, the matter came up for annual review. The suitable placement order was ordered to remain in effect as to minors Tamara, Le Ann, Jon and Robert. Minor Melissa was to remain in the home of the mother. The father was ordered to have no contact, visits or phone calls with any minors until further order of the court. The order in the interlocutory judgment of dissolution of marriage for reasonable visitation was ordered revoked. The father was ordered to have no contact even if released. The department of public social services was ordered to look into a plan designed to reunite the mother and the minors. The mother was ordered to participate in counseling as di-

---

*Assigned by the Chairperson of the Judicial Council.

rected by the department of public social services. Said department was ordered to look into the mother's ability to care for minors Michael and Melissa, and it was ordered that the dependency court and department of public social services were to be notified of the imminent release of the father by any other court.* The matter was continued to February 20, 1981, for annual review.

Notice of appeal from the annual review order was timely filed on May 13, 1980, by the minors' father.

*Case No. J917389 (Michael)*

On August 20, 1979, a petition was filed with regard to minor Michael pursuant to section 300 of the Welfare and Institutions Code, alleging that on or about April 14, 1978, his siblings were taken into protective custody due to various acts of sexual abuse and that his home was unfit by virtue of these acts.

On December 6, 1979, the adjudication of the petition as to Michael commenced. The petition was amended by striking the language in count VII that read "and failed to take steps to protect minor's siblings" and striking the entirety of counts V and VI. Petitioner submitted the matter on a request for judicial notice of the petitions in the matter of the other minors, the parents contesting only the legal not factual aspects of the petitioner, and the matter was taken under submission. Counsel were ordered to prepare points and authorities on the issue of jurisdiction.

On March 20, 1980, the court took jurisdiction of Michael under the sibling filing. Subsequently, Michael was adjudged a dependent child of the juvenile court and ordered suitably placed, allowing him to remain in his mother's home. The father was ordered to have no visits or contact with the minor, even in the event of his release, until further order of the court. The matter was continued to February 20, 1981, for annual review.

On April 16, 1980, appellant filed an application for rehearing and order pursuant to section 558 of the Welfare and Institutions Code, as to the adjudication proceedings of March 20, 1980, which was denied.

---

*Confined to Patton State Hospital.

Notice of appeal was timely filed on May 14, 1980. On June 4, 1980, notice of appeal from the denial of rehearing as to the adjudication was filed.

STATEMENT OF FACTS

*Case Nos. J910124-910128*

The report of Desmond Fung, M.D. (dated Mar. 17, 1980), was received into evidence. Dr. Fung indicated that the mother, Mrs. S., complained that she had great difficulty taking care of her two children at home and that it was conceivable that her difficulty as a mother would be greatly magnified if she had to care for four children. Therefore, he recommended no added responsibilities then or in the near future, since the "stresses resulting from any additional responsibility may very well strain her limited capability and the effect would be detrimental to her mental stability."

The report of Thomas R. Brigante, Ph.D. (dated Jan. 14, 1980) was received into evidence.

The report indicated that Dr. Brigante had tested and evaluated appellant's sons, Jon and Robert S.

It indicated that Jon demonstrated "striking intellectual ability," with an overall I.Q. of 141 on the Wechsler Scale, which placed him in the "very superior range." It indicated that he had "underlying anxiety" and possibly an "underlying depression" but that he did show some "healthy curiosity and the capacity to experience pleasure in play."

It indicated that on intelligence testing, Robert had "a very superior score on performance measures" but was only in the normal range on the verbal portion. Despite the impairment in adequately assessing his verbal ability, the overall score was 116, which is "high average."

It recommended a low stress level for both boys and a concern that they might "retreat into illness if neglected, misunderstood, or ignored."

The children's services worker's report, filed December 6, 1979, was also received in evidence.

It indicates further that appellant continues in the MDSO program at Patton State Hospital, wants Melissa to remain with her mother, would like the other minors returned to her care, and has expressed the goal of reunification.

It indicates also that Mrs. S. would like the older children returned and to have Melissa remain with her. She said she did not intend to let appellant back in the home when he is released.

Appellant relies on Tamara to care for the younger children.

It indicates that Mrs. S. had denied any knowledge of the sexual abuse, but that the therapist found this questionable and was doubtful that Mrs. S. "will not succumb to her husband's domination."

Tamara has stated that she did not want to go back home if things could not be different. The girls feel they are not getting love from their mother and the staff has observed that the mother is "increasingly short-tempered with the girls."

Mrs. S. "provides good physical care" to minor Melissa and her infant brother and that the children are clean and appear well fed.

The recommendation was that the minors remain dependent children of the court, that the previous suitable placement order remain in effect, that the four eldest children remain as placed, and that the minor Melissa be placed in a long term foster home under supervision of the department of public social services; that the previous order of no visitation by the father but allowing a biweekly 30 minute monitored telephone call to the minors remain in effect.

An unsigned letter purporting to have been dictated by appellant's son Jon, was also admitted into evidence. It alleges some incestuous conduct, an incident where he allegedly was allowed to drink wine at the age of three, and states, "I think I can remember my Dad used to spank us with a belt sometimes."

The court then stated that he had "reviewed the entire file in [the] matter."

The only in-court witness was Desmond Fung, M.D. He interviewed the minors' mother and wrote the report dated March 17, 1980.

Dr. Fung testified Mrs. S. is socially very isolated and is prone to feeling depressed and helpless.

He indicated that she had successfully associated herself with an elderly Vietnamese couple. He recommended assistance for her in caring for the children, perhaps by means of live-in help or day care, so that she could free herself for activities that would promote her own growth, such as learning English, learning to drive and learning more about American culture. He felt that the alternative of temporary removal of the children from her would be traumatic and thereby hinder her growth.

An interlocutory judgment of dissolution of the marriage of the parties, dated December 4, 1979, was received into evidence upon request of appellant's counsel.

Three Patton State Hospital summaries were then received into evidence on the department of public social services' request.

The first summary, dated February 27, 1979, was written when appellant was a new admission. It indicates a satisfactory adjustment to his unit and progress in acknowledging the severity of the crime and in developing family skills, communication skills and tension reduction skills and assertiveness. It states, "Patient is well motivated for therapy and cooperates with staff."

The second is dated August 21, 1979, and indicates that at that time, appellant had been treated for about nine months, and had demonstrated an increased awareness of his own sexuality and respect for the sexuality of others and demonstrated an adequate level of knowledge in the area of human sexuality. It indicates that he felt guilt regarding the separation of the children from their mother and the possible impending divorce. It also indicates that he was beginning to realize the psychological damage he may have caused the children and was willing to accept the responsibility for his crime. It recommended future involvement in group therapies relating to incest problems.

The third, dated January 15, 1980, written less than four months later, complains that appellant: "has concentrated much of his efforts on legal issues, in an attempt to negotiate with the court to retain custody of his children. This has resulted in his spending approximately 26 days

within the past six months in the court. His involvement in the legal issues has resulted in a lack of observable progress in his treatment."

It goes on to state: "It is a concern of the Interdisciplinary Team that should Mr. S. continue his involvement in legal issues, particularly the placement of his children, it will negate any therapeutic benefit he may otherwise gain from this facility."

Finally, it makes the following statement: "It is also the opinion of the Interdisciplinary Team that Mr. S.' motivation in keeping his family intact may be solely for the purpose of continuing his sexual relationship with the children upon his release to the community, not because of true aspirations for a family unit. It is the opinion of the treatment team that Mr. S. should remain separated from his children, the victims."

*Case No. J917389 (Michael S.) Adjudication*

Petitioner submitted the adjudication of the petition on a request for judicial notice of the petitions in the matter of the other minors.

The court then took the matter under submission pending written points and authorities and argument by counsel.

On March 20, 1980, jurisdiction over Michael S. was taken.

Disposition was then held.

The children's services worker's report filed December 7, 1979, was received into evidence.

The report indicates that Michael appears to be a happy baby in good health and he is walking, that Mrs. S. stated she had a court date of December 4, 1979, for her dissolution, and that she does not plan to reconcile with appellant.

It states that appellant objects to the court taking jurisdiction of Michael since he was not born when the alleged acts occurred, and that this action is causing a lot of unnecessary pressure and strain. He stated that the petition incorrectly assesses his motive in adopting Tamara and Le Ann, and that some of his statements in the tape recordings regarding molesting other girls, were exaggerations and/or untrue.

The social worker's report indicated that Dr. Roland Summit's testimony at the older minors' disposition hearing was that appellant's prognosis for change is "almost nil."

The disposition was submitted, and the minor was declared a dependent child of the court.

## DISCUSSION

### I

■ The appellant contends that the court erred in taking jurisdiction of Michael who was born after appellant's incarceration.

*May a court take jurisdiction over a child born after the events that resulted in the dependency of the other siblings?*

On March 20, 1980, before the court was a petition relating to minor, Michael S. only, the matter having been taken under submission by the court on December 6, 1979.

The only issue before the court was whether the court should take jurisdiction of the minor pursuant to section 300, subdivisions (a) and (d) of the Welfare and Institutions Code.

The court in sustaining the petition as to Michael stated: "In essence, we have a sibling filing as to Michael, who was not born at the time the jurisdictional allegations occurred. However, it is apparent from the evidence in this case that Michael's mother was a participant in the acts which gave rise to the filing of the petitions with the court as to the other siblings."

The court goes on to state, "I don't think that the court would be justified in concluding from the state of the evidence presented that Michael necessarily is in no danger. He may not be in any present danger in his infant state, but if I am going to do it, I would rather do it on the side of caution. And I feel there is an adequate legal basis on the nature of the events alleged in the petition, for Michael as a sibling, to justify the court taking jurisdiction."

In the instant case, the facts indicate sexual abuse of Tamara and Le Ann, siblings of Michael, over a period of years by the father, with the

mother's participation as well as her consistent failure to take any steps to alleviate the problem.

In the case of *In re Melissa H.* (1974) 38 Cal.App.3d 173, 175 [113 Cal.Rptr. 139], the court stated, "under subdivision (d) of section 600 of the Welfare and Institutions Code, the jurisdiction of the juvenile court extends to any person whose home 'is' unfit. The use of the present tense verb indicates an intent that the unfitness exist at the time of the hearing; however, past events can aid in a determination of present unfitness." (See also, *In re Morrow* (1970) 9 Cal.App.3d 39, 56 [88 Cal.Rptr. 142]; *In re Zimmerman* (1962) 206 Cal.App.2d 835, 844 [24 Cal.Rptr. 329].)

A part of the evidence introduced at the annual review hearing, was the report of Dr. Desmond Fung, M.D., dated March 17, 1980.

Dr. Fung, under court appointment, indicates in his report, "In our opinion, although Mrs. S. may have potentials, her dependency needs are at present extremely strong and her capability for problem solving is questionable. She has failed to show any initiative in shaping her own life, but relied on others to do that for her. In conclusion, her social adjustment is poor, her coping skills very limited and she is using denial of reality and avoidance as a behavioral pattern in dealing with stressful situations."

In this case, the mother lived with the father eight years during which various sexual abuses took place and his return and resumption of residence in the mother's home cannot be ruled out.

A hospital report from Patton State Hospital was admitted into evidence. The report dated January 15, 1980, indicates "the opinion of the interdisciplinary team that Mr. S.'s motivation in keeping his family intact may be solely for the purpose of continuing his sexual relationship with the children upon his release to the community, not because of true aspirations for a family unit. It is the opinion of the treatment team that Mr. S. should remain separated from his children, the victims."

The case of *In re Melissa H., supra*, 38 Cal.App.3d 173, the court also states: "The lower court's determination that the home is unfit must be affirmed. The potential return and resumption of residence in the home by the unfit parent justified the determination that the home

was unfit and the best interest of the child were served by making her a ward of the court."

All reasonable inferences must be indulged in to support the findings, and the evidence must be viewed in the light most favorable to the lower court's ruling. (*In re Luwanna S.* (1973) 31 Cal.App.3d 112 [107 Cal.Rptr. 62].)

In dependency proceedings, the welfare of the minor is the paramount concern of the court. (*In re Farley* (1958) 162 Cal.App.2d 474 [320 P.2d 230]; *In re Corrigan* (1955) 134 Cal.App.2d 751 [286 P.2d 32].)

The parents do not represent a competing interest in this respect.

A perusal of the California Juvenile Court Deskbook, second edition (Cont.Ed.Bar 1981) on page 187, gives insight into the situation before the court, it states, "The mothers of children in child-molestation cases often fall into a common pattern. They are usually very dependent women, who lack self-confidence in their ability to fulfill the role of wife. They are generally thoroughly domineered by the molesting adult. This latter quality is what makes return to the home, unless the molesting adult is absolutely removed from the home, such a grave risk. In many cases, the mother is consciously aware of what is going on, or suspecting what is happening, closes her eyes to the realities of the situation. She would rather face damage to the child than possible loss of her spouse. For the molesting adult, the very availability of a young child is sometimes keeping him in the home situation."

We believe that the evidence was sufficient to show that the conditions that lead to the original finding that the home was unfit have not been alleviated.

Therefore, the court was correct in taking jurisdiction over Michael, even though Michael was not born at the time the jurisdictional allegations as to the other siblings occurred. (See also, *In re Lisa D.* (1978) 81 Cal.App.3d 192 [146 Cal.Rptr. 178]; *In re Biggs* (1971) 17 Cal. App.3d 337 [94 Cal.Rptr. 519]; *In re Jeannie Q.* (1973) 32 Cal.App.3d 288 [107 Cal.Rptr. 646].)

## II

■   Appellant contends that the no-contact order was made without notice in violation of appellant's due process rights.

*Appellant was not deprived of procedural due process at the annual review hearing of March 20, 1981.*

There are three procedures by which a modification of a juvenile court order in a dependency proceeding may be obtained: (1) by supplemental petition; (2) application for modification hearing and (3) annual review hearing.

The law requires that the juvenile court annually review the progress of a minor adjudged a dependent child even in the absence of a supplemental petition or application for modification hearing. (Welf. & Inst. Code, § 366; Cal. Rules of Court, rule 1377(f).)

At the annual review hearing, the probation officer, social worker, and any other interested person have the opportunity to present their views on modification of the juvenile court's order or termination of the court's jurisdiction. (Welf. & Inst. Code, § 366; Cal. Rules of Court, rule 1377(f)(3).)

Notice of the annual review hearing is first given at the conclusion of the disposition hearing at which time the proceeding must be continued to a specific future date not more than one year from the date of the order adjudging the minor a dependent child. (Welf. & Inst. Code, § 366; Cal. Rules of Court, rule 1377(f).)

The rules of a disposition hearing apply to annual review hearings.

*California Rules of Court, Rule 1378(e)*

It would appear that the very essence of an annual review hearing is such that the court should be able to modify previous orders or the annual review would serve no useful purpose.

The notice requirement under section 386 of the Welfare and Institutions Code is to be read in connection with section 387 which applies to removing a dependent child from the parent's custody.

Section 387 of the Welfare and Institutions Code reads as follows: "An order changing or modifying a previous order by removing a minor from the physical custody of a parent, guardian, relative or friend and directing placement in a foster home, or commitment to a private institution or commitment to a county institution, shall be made only after noticed hearing upon a supplemental petition."

In the case of *In re Fred J.* (1979) 89 Cal.App.3d 168, at page 173 [152 Cal.Rptr. 327], the court stated that, "'Filing by the probation officer of a supplemental petition for modification is *required* only when an order is sought that would remove the minor from the home of a parent.... Apparently other types of modifications may be made without a supplemental petition....'"

The order of the court revoking the order of the interlocutory judgment of dissolution of marriage for reasonable visitation, and that the father was to have no contact even if released, was not an order removing a minor from the home, thus did not require a supplemental petition and notice pursuant to section 386 of the Welfare and Institutions Code.

### III

▪ *The appellant contends that the no-contact order of the court since it was based on a finding of detriment to the minors, was not supported by substantial evidence.*

On July 23, 1981, the minors Tamara and Le Ann were sent home on a temporary order pending the annual review. The minors Jon and Robert were ordered sent home to their mother at a proceeding on May 15, 1981; and the minors Melissa and Michael have remained in the home of their mother.

At the time of the annual review the appellant was in Patton State Hospital. He had been in the hospital approximately one year without, according to the interdisciplinary team, showing any observable progress in his treatment. It was also their opinion, "that Mr. S. should remain separated from his children, the victims."

The report of Mrs. Suzette Branson, the children's services worker, was received into evidence at the annual review hearing.

The report indicates that Mr. S. was a pedophile and had molested his own and other children. It indicated that sexual gratification was the primary purpose for adopting Tamara and Le Ann.

The above evidence, together with the evidence that was received in the original court hearing on December 15, 1978, when the children were declared dependent children of the juvenile court, where a finding was made that it would be detrimental for them to remain in their home, constitutes substantial evidence of detriment to the children. At the annual review hearing the court considered the entire superior court file.

## IV

*The appellant also contends that the court acted in excess of its jurisdiction because there was no plan for reunification of the family.*

In the instant case the department of public social services did initiate a plan to reunify the minors and their mother.

In the case before this court, on the date of the annual review hearing the mother and children were united in the home of the mother.

Rule 1376, California Rules of Court, provides in pertinent part: "(b) . . . If a recommendation is made to remove the minor from the home, the . . . social worker shall also include in the social study a recommended plan for reuniting the minor with the family. . . . [¶] (d) . . . In any judgment and order of disposition, the court shall state the social study has been read and considered by the court, and, where appropriate, that the plan for family reunification has been discussed with the parents." Rule 1376 of the California Rules of Court does not contemplate a situation as that which is before this court where the father was in a state hospital being treated for pedophilia, after years of sexual abuse of some of the minors in the household. In addition, the staff at the hospital did not believe that after a year of treatment at the hospital the appellant had made progress.

*In re Edward C.* (1981) 126 Cal.App.3d 193, 205 [178 Cal.Rptr. 694] the court stated: "We are cognizant of the legislative and judicial concern for family relationships and for the need to strengthen family ties. (§ 202; *In re Jeannie Q., supra,* 32 Cal.App.3d 288, 295-297.) We do not think, however, that the Legislature has mandated, through the

Judicial Council, a mechanical approach to a reunification plan for a family. Such a plan must be appropriate for each family and be based on the unique facts relating to that family."

The reunification of the minors with the mother satisfies the requirement of section 202 of the Welfare and Institutions Code.

Appellant has the right to petition the court at any time upon a showing of changed circumstances, under sections 385 and 388 of the Welfare and Institutions Code.

## V

■ *The dependency status of a child is civil in nature.*

Dependency proceedings are civil in nature.

In the case of *In re Robert P.* (1976) 61 Cal.App.3d 310, at page 321 [132 Cal.Rptr. 5], the court stated the following: "The application of the exclusionary rule, primarily in criminal cases, may be necessary to insure that the law enforcement officers observe the proscriptions of the Fourth Amendment. However, we are mindful that just dispositions are frequently thwarted thereby and we see no necessity to extend the rule to the relatively few violations in child custody actions which are not criminal in nature."

Another case which indicates that a dependency case is civil in nature is *Collins v. Superior Court* (1977) 74 Cal.App.3d 47, 53-54 [141 Cal.Rptr. 273]; where the court says: "this [a dependency case] is not a prosecution of [a] parent [], but a civil proceeding for the protection of the child. . . . Any claim of privilege against self-incrimination would be inapplicable. . . ." (*In re Christopher B.* (1978) 82 Cal.App.3d 608, 612, 614-615 [147 Cal.Rptr. 390].)

## VI

■ Appellant contends that the no-contact order is contrary to law in that it constitutes a criminal punishment.

*Dependency proceedings do not constitute punishment.*

In the case of *In re A. J.* (1969) 274 Cal.App.2d 199, 202 [78 Cal.Rptr. 880], the court stated, "[t]he Juvenile Court Law is designed

not primarily for the reproof and improvement of erring parents; its purpose is to provide protection, guidance and discipline to children who, for the reasons mentioned in the statute, may become dependent upon the juvenile court, acting *in loco parentis*."

The court's involvement in wardship matters is not necessarily based on a parents' wrongdoing. It is "the welfare of the child which is of paramount concern." (*In re Raya* (1967) 255 Cal.App.2d 260, 264 [63 Cal.Rptr. 252].)

There is no evidence that the dependency court acted with any thought other than the best interest of the minors. The court's order, which could possibly be modified at a later date, that the father have no contact with the children, certainly in this case does not involve concepts of criminal punishment.

## VII

■ Appellant contends that he was denied effective assistance of counsel.

*Denial of effective assistance of counsel does not apply in dependency cases.*

Dependency cases are civil in nature. (*In re Christopher B.* (1978) *supra*, 82 Cal.App.3d 608, 614-615; *Collins* v. *Superior Court* (1977) *supra*, 74 Cal.App.3d 47.)

In the case of *Chevalier* v. *Dubin* (1980) 104 Cal.App.3d 975, at page 978 [164 Cal.Rptr. 118], the court states, "we are aware of no authority, and counsel has cited us none, which would permit a trial or appellate court to grant a retrial to an unsuccessful litigant in a civil case, with or without punitive damages, on the grounds of incompetency of counsel."

The judgment and the orders of the juvenile court are affirmed.

Spencer, P. J., and Dalsimer, J., concurred.

A petition for a rehearing was denied January 29, 1982, and appellant's petition for a hearing by the Supreme Court was denied March 17, 1982.