130 Cal.App.3d 567 (1982)
181 Cal. Rptr. 843
In re COURTNEY S., a Minor.
SANTA CLARA COUNTY DEPARTMENT OF SOCIAL SERVICES, Plaintiff and Respondent,
v.
KATHERINE Q., Defendant and Appellant.
Docket No. 50405.
Court of Appeals of California, First District, Division One.
April 13, 1982.
*570 COUNSEL
Peter F. Goldscheider for Defendant and Appellant.
Louis P. Bergna, District Attorney, and Robert J. Masterson, Deputy District Attorney, for Plaintiff and Respondent.
OPINION
GRODIN, J.[*]
Katherine Q., mother of Courtney S., appeals from orders of the juvenile court which found Courtney to be a dependent child of the court within the meaning of Welfare and Institutions Code section 300, subdivision (d), and which directed that Courtney be removed *571 from her mother's custody and placed in the custody of her father, Paul S.
We first summarize the relevant portions of the record, viewing it, as we must, in the light most favorable to the order of the juvenile court. (In re Luwanna S. (1973) 31 Cal. App.3d 112, 114 [107 Cal. Rptr. 62].)
Courtney was born March 27, 1975. Her parents, Katherine and Paul, were divorced shortly thereafter. Courtney remained with her mother, while her brother went with her father.
In 1976, Katherine began living with Arthur Q. On October 24, 1979, Courtney, then four and one-half years old, complained to her mother of an irritation of the vaginal and rectal areas, and revealed that Arthur had placed his penis in her anus on two occasions and that there had been oral copulation on a third occasion.
Arthur was arrested on October 31, 1979, and gave a statement to Detective Stevenson, which was tape recorded. In that statement, he admitted to sexual activity with Courtney over a long period of time. Arthur was charged with engaging in sexual acts with Courtney, and was held to answer on November 15, 1979. Katherine testified at the preliminary hearing. Following the preliminary hearing, Arthur admitted to Katherine that he had had sexual contacts with Courtney. Katherine at some point listened to the taped statement which Arthur had given Detective Stevenson.
In November and December 1979, Katherine and Courtney each attended six counselling sessions with Christine Remus, a licensed marriage, family and child counsellor who works for an emergency treatment center in Palo Alto, and to whom Katherine and Courtney had been referred by the police. The purpose of the sessions was to help alleviate the trauma to both. Courtney, during one of these sessions, told Mrs. Remus she did not want Arthur to come home. At a counselling session on December 19, 1979, Mrs. Remus conveyed that information to Katherine, who began defending Arthur's actions. She stated something like, "I don't know what else he could have done after I refused kinky sex."
Mrs. Remus regarded this reaction as indicative of a "classical reaction for ... the mother in an incestuous family," in which the mother permits a daughter to become her sexual substitute. Further counselling *572 sessions had been scheduled for January 3 and 10, 1980, but Katherine called to cancel these. Mrs. Remus attempted to contact Katherine, but without success. Believing that Courtney might again be in danger of sexual molestation, Mrs. Remus called Terri Carroll, the probation officer assigned to the case, and reported her suspicion. On January 29, 1980, the petition was filed which led to this proceeding.
After the preliminary hearing, Detective Stevenson had told Katherine to keep in touch, and let him know of any change in address, so that she would be available to testify at Arthur's trial. As it later appeared, Katherine moved from Santa Clara County with Courtney in late November, to live with Arthur's family in Roseville, without informing Detective Stevenson or anyone in the juvenile department. On December 31, 1979, she and Arthur were married. Early in January, Katherine and Courtney moved to Bakersfield, again without notifying the authorities. When the instant petition was filed, and she could not be located, a warrant issued. She appeared on February 25, 1980, to deny the allegations of the petition. At that time she met with a probation officer, but did not inform her that she and Arthur had been married.
There was evidence that before the complaints by Courtney which precipitated these events Katherine had been suspicious, and with reason, that Arthur was molesting Courtney. There was also evidence that on several occasions Courtney was permitted to touch Arthur's penis, in Katherine's presence.
Mrs. Remus testified that in her opinion several years of therapy would be required before Katherine could be relied upon to protect Courtney, and that the danger existed even though Arthur was subject to a court order not to have any contact with Courtney for a period of five years. Katherine testified it was her plan to set up separate households, one for herself and Courtney, and a second for Arthur and herself, and have the child stay with the grandparents in Roseville during periods of contact between Arthur and herself.
Additional evidence was adduced at the disposition hearing, following the court's jurisdictional order. Paul S., Courtney's father, testified that when he lived with Katherine he found his son, Mark, tied to bedposts in the home. Diane Everstine, head of the emergency treatment center of Santa Clara County and the supervisor of Mrs. Remus, expressed *573 her opinion that Courtney was a "fragile child," and that Katherine was not stable enough to meet her needs, and required long-range psychotherapy.

Discussion.

1. Admissibility of the tape recording.

Arthur appeared at the hearing, but invoked his immunity under the Fifth Amendment. The tape recording of his statement to Detective Stevenson was admitted into evidence on the basis of his consequent "unavailability" as a witness (Evid. Code, § 240). Katherine contends, alternatively, (1) that Arthur, already convicted on the basis of a guilty plea, was no longer entitled to the Fifth Amendment privilege; (2) that if he was entitled to the privilege, he should have been granted immunity; (3) that the district attorney, in denying immunity, and in representing Courtney generally, acted under a disabling conflict of interest; and (4) that the tape recording was not admissible as evidence in any event.
(1) The first contention runs counter to the established rule that a witness retains the privilege during the pendency of an appeal. (People v. Lopez (1980) 110 Cal. App.3d 1010, 1021 [168 Cal. Rptr. 378].) Since Arthur still had the right to appeal at the time his testimony was sought, the privilege was still available to him.
(2) The district attorney, representing Courtney, called Arthur as a witness. When Katherine requested immunity so that Arthur could be compelled to testify, the district attorney objected, and refused. The trial court was obligated to "treat such an objection and declaration as conclusively establishing that an immunity order ... cannot be issued because it would or might unduly hamper criminal prosecution of the witness." (Daly v. Superior Court (1977) 19 Cal.3d 132, 148 [137 Cal. Rptr. 14, 560 P.2d 1193].) Thus, the trial court had no real power to grant immunity. (Ibid.; see also, James Talcott, Inc. v. Short (1979) 100 Cal. App.3d 504, 510 [161 Cal. Rptr. 63]; Rysdale v. Superior Court (1978) 81 Cal. App.3d 280, 285 [146 Cal. Rptr. 633].)
(3) Appellant's conflict of interest argument is asserted for the first time on appeal. While she contends that the district attorney should not have been permitted to represent Courtney, because of possible conflicts *574 with that office's prosecutorial obligations, and that the district attorney's refusal to grant immunity was tainted by that potential conflict, she at no time objected to the district attorney's representation of Courtney, or sought to have him removed as counsel. Moreover, in the circumstances of this case, actual conflict of interest has not been established. (Cf. People v. Superior Court (Martin) (1979) 98 Cal. App.3d 515, 522 [159 Cal. Rptr. 625].) For these reasons, the contention must be denied.
(4) Finally, and contrary to appellant's fourth contention, the tape recording was clearly admissible as a declaration against penal interest (Evid. Code, § 1230), and relevant to show the duration and extent of the molestation, as well as Katherine's knowledge thereof, based upon her having heard the tapes before marrying Arthur. The trial court did not err in finding the statement presumptively reliable (cf. People v. Chapman (1975) 50 Cal. App.3d 872, 879 [123 Cal. Rptr. 862]), nor did it abuse its discretion under Evidence Code section 352 in deciding that the probative value of the evidence outweighed its prejudicial effect.

2. Psychotherapist-patient privilege.

(5) Appellant objected to the admission in evidence of testimony by Mrs. Remus and Dr. Everstine concerning communications by Courtney and Katherine in the course of counselling sessions, on the basis of the psychotherapist-patient privilege (Evid. Code, § 1014). The trial court overruled this objection, allowing the testimony on a limited basis. Appellant contends this ruling was error. We do not agree.
Whether or not Katherine was in a position to invoke Courtney's privilege, as against the district attorney's waiver (see Evid. Code, § 1013), as she contends, Courtney's privilege was inapplicable by reason of Evidence Code section 1027,[1] as the trial court determined. Quite clearly, Courtney "has been the victim of a crime," and Mrs. Remus could reasonably believe that the disclosure was "in the best interest of the child" within the meaning of that section. Appellant's contention that section 1027 should be limited to situations in which a "new" crime has been committed must be rejected. The Law Revision Commission *575 comment to section 1027 states that the exception provided by that section is "necessary to permit court disclosure of communications to a psychotherapist by a child who has been the victim of a crime (such as child abuse) in a proceeding in which the commission of such crime is a subject of inquiry." The instant proceeding meets that definition.
(6) We likewise find no error in the trial court's determination that Evidence Code section 1024[2] rendered admissible that limited portion of Katherine's communication to Mrs. Remus  her defense of Arthur at the December 19 counselling session  which evidenced a threat of danger to Courtney, and prompted Mrs. Remus' report to the probation officer.[3] If, as appellant contends, section 1024 is impliedly limited to "physical danger" (but cf. People v. Stoddard (1964) 227 Cal. App.2d 40, 42 [38 Cal. Rptr. 407]; People v. Kirk (1975) 49 Cal. App.3d 765, 769 [122 Cal. Rptr. 653]), the risk of sexual assault falls comfortably within that characterization. And nothing in the language or policy of section 1024 precludes its application simply because the threat of danger implicates a third party, rather than the patient alone. There was reasonable cause to believe that Katherine, as a participant in an incestuous family, would offer her daughter as a sexual substitute and thereby expose her to the risk of sexual abuse. Thus, there was a basis for concluding that Katherine was "in such mental or emotional condition as to be dangerous" to Courtney.

3. Admissibility of the social study report.

Appellant objected in the trial court to the admission of the social studies report at the jurisdictional hearing, and the objection was overruled. She candidly concedes that the trial court's ruling was correct under In re Biggs (1971) 17 Cal. App.3d 337 [94 Cal. Rptr. 519], and as codified in the California Rules of Court for juvenile proceedings, rule 1365, but invites us to "overrule" that case, on the ground that the applicable provisions of the Welfare and Institutions Code (§§ 355, 358, 701) contemplate receipt of the social studies report only after the jurisdictional hearing. We decline the invitation. (See also, In re La Shonda B. (1979) 95 Cal. App.3d 593, 601 [157 Cal. Rptr. 280].)

*576 4. Sufficiency of the evidence.

(7) Appellant contends that even considering the evidence she says should have been excluded, there was insufficient evidence to support either the trial court's jurisdictional finding or its dispositional order. We do not agree. There was sufficient evidence to support a finding, not only that the child had been molested, but that the mother was unlikely to protect the child against similar molestation in the future, and thus to establish that the mother's home was "an unfit place for him [or her] by reason of neglect, cruelty, depravity, or physical abuse." (Welf. & Inst. Code, § 300, subd. (d); see In re Michael S. (1981) 127 Cal. App.3d 348, 358-359 [179 Cal. Rptr. 546].) The evidence we have described was sufficient also to support the trial court's custodial determination under the applicable standard. (In re Nicole B. (1979) 93 Cal. App.3d 874, 882 [155 Cal. Rptr. 916]; In re Christopher B. (1978) 82 Cal. App.3d 608, 616-618 [147 Cal. Rptr. 390].) (8) We find no merit in appellant's contention that the probation officer failed to include a plan for family reunification as required by rule 1376(b) of the Juvenile Court Rules. The probation officer stated that Courtney could be returned to her mother only when it appeared that she would be out of danger, and the trial court's final order provided that the mother should "be involved in [a] counseling program before consideration of [the] minor's return to her." In light of the statutorily prescribed annual review, this is as much of a "plan" as the circumstances justified.
Affirmed.
Racanelli, P.J., and Goff, J.,[*] concurred.
Appellant's petition for a hearing by the Supreme Court was denied June 9, 1982.
NOTES
[*] Assigned by the Chairperson of the Judicial Council.
[1] Section 1027 provides: "There is no privilege under this article if all of the following circumstances exist: (a) The patient is a child under the age of 16. (b) The psychotherapist has reasonable cause to believe that the patient has been the victim of a crime and that disclosure of the communication is in the best interest of the child."
[2] Section 1024 provides: "There is no privilege under this article if the psychotherapist has reasonable cause to believe that the patient is in such mental or emotional condition as to be dangerous to himself or to the person or property of another and that disclosure of the communication is necessary to prevent the threatened danger."
[3] Katherine made no communication directly to Dr. Everstine. Dr. Everstine learned of the disputed communication through Mrs. Remus.
[*] Assigned by the Chairperson of the Judicial Council.