[No. A033367. First Dist., Div. Two. Aug. 18, 1986.]

In re JAMES B. et al., Persons Coming Under the Juvenile Court Law.
SOLANO COUNTY DEPARTMENT OF SOCIAL SERVICES,
Plaintiff and Respondent, v.
DAWN B., Defendant and Appellant.

**COUNSEL**

L. Jeannette Clark, under appointment by the Court of Appeal, for Defendant and Appellant.

Charles O. Lamoree, County Counsel, and Thomas H. Gordinier, Deputy County Counsel, for Plaintiff and Respondent.

**OPINION**

**BENSON, J.**—James B. (age seven) and Janee B. (age two) were declared dependent persons as described by Welfare and Institutions Code section 300, subdivision (d) (hereinafter section 300(d)) and placed in the home of their mother under the supervision of the Director of the Solano County Public Welfare Department.

The order of dependency is based on a determination that the minor children's home was "unfit" due to the continued presence of the seven-year-old James within the home. The factual basis for the trial court's ruling rested on instances of molestation inflicted by James upon his two-year-old sister Janee when, on several occasions, the children were bathing together in the family bathtub. The legal premise relied on by the trial court to support its decision was a determination that during the bathtub incidents James had "custody or care" of his sister Janee.

Dawn B., the mother of the two minor children, appeals the order. We reverse, holding as a matter of law, that custody or care of Janee, within the meaning of section 300(d), was not reposed in James at the time of the occurrences. We further hold that there was no evidence before the lower court to support and justify its conclusion that the home was "unfit" so as to warrant the court's assumption of dependency jurisdiction.

The facts are as follows: Dawn B. is the custodial parent of James and Janee. In March 1985, Dawn noticed that Janee was acting afraid of James and was protective of her genital area. Dawn became suspicious that Janee had been sexually abused by her brother and had Janee examined by a physician. Although the examination failed to reveal any physical evidence

of abuse, Dawn confronted James. James admitted to molesting his sister. The incidents occurred several times in late December 1984 or January 1985 while James and Janee were bathing together. When the events took place the mother was in an adjoining room.

Following discovery, James was restricted to his room and spanked by Dawn. Dawn also discussed the incident several times with her son, explaining the harm he could have done to his sister.

The physician's office contacted County Social Services,[1] which in turn contacted Dawn. Dawn assured the assigned social worker, Mr. Panzer, that she would obtain counseling for James and expressed a willingness to accept any help Social Services might provide. Mr. Panzer visited the family "possibly a dozen times" during the five months he was assigned the case.

Dawn attempted to obtain counseling for James from Medical Health Services. Some delay was experienced and James was not accepted for counseling until June 1985. The major cause of delay was a shortage of qualified counselors. Waiting for a counseling period which did not conflict with James' school schedule may have contributed to the delay. At Mr. Panzer's recommendation, Dawn also arranged counseling for herself, to help her cope with the situation.

In August 1985, Social Services filed a petition for protective custody of the children, based on the incident in January. The reason for the petition's timing is unclear. Mr. Panzer acknowledged that there was no current behavior by either child which caused concern. By all accounts the children were happy and normal, displaying no behavior attributable to the incident. Both James and Dawn were undergoing therapy. Mr. Panzer's petition concluded that Dawn B. needed guidance and support to insure continued counseling for herself and James.

At the jurisdictional hearing, the court found James and Janee dependent children as described by section 300(d). The ground for finding jurisdiction was that James technically had "custody or care" of Janee while they bathed together. Jurisdiction was then predicated on the home being unfit due to the continued presence of James. The court specifically noted that Dawn had not been "derelict" in "trying to help James," and further stated "You have done fine."

At the dispositional hearing the court made the children dependents of the court and placed them in the home of their mother. The court ordered

---

[1]Presumably pursuant to Penal Code section 11160 which requires physicians to report injuries inflicted in violation of any penal law.

James and Dawn to participate in a therapy program under Social Services supervision pursuant to Welfare and Institutions Code section 362. This appeal followed.

### I.

■ Respondent urges that this appeal is moot, as the juvenile court terminated jurisdiction over James and Janee on April 22, 1986. However, as the order of termination specifically states, it is conditional on Dawn and James continuing to participate in a group counseling program for households in which molestation has occurred. Therefore, this appeal is hardly moot as Dawn and James remain under considerable restriction.

### II.

■ Welfare and Institutions Code section 300 provides in relevant part as follows:

"Any person under the age of 18 years who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge such person to be a dependent child of the court:

". . . . . . . . . . . . . . . . . . . . . . . . .

"(d) Whose home is an unfit place for him or her by reason of neglect, cruelty, depravity, or physical abuse of either of his or her parents, or of his or her guardian or other person in whose custody or care he or she is."

Under subdivision (d), the jurisdiction of the juvenile court extends to any person whose home is unfit by reason of these conditions. (*In re Nicole B.* (1979) 93 Cal.App.3d 874, 878 [155 Cal.Rptr. 916].)

The threshold question of whether James falls within the 300(d) definition of an ". . . other person in whose custody or care he or she is," is readily answered in the negative. There must exist some credible evidentiary demonstration that the custody or care of a minor child has, in fact, been put under the authority, or at the disposal, of another person. Obviously, this can occur in a variety of ways and no precise definition can be structured. It can take place by an expressed delegation of the responsibility for custody or care of a minor to another, or it can occur impliedly, such as where a parent through indifference, inability or unwillingness to exercise control, passively permits or submits to the assumption of a minor's custody or care by another. However, it is eminently clear that in the family home setting, a child of tender years cannot be charged with having custody or care of a

younger sibling by the mere circumstance of the mother's temporary absence from the joint presence of her children while she attends to household matters in an adjoining room. To reach any other conclusion would stretch legislative intent beyond reason and play serious mischief upon parental custody rights.

There is nothing in the record before us which even remotely suggests that Dawn was indifferent to her parental responsibilities, nor incapable or unwilling to exercise them. The evidence is all to the contrary.[2]

Respondent asserts on appeal that jurisdiction was based not on the threat of future sexual abuse by James but on appellant's neglect and dereliction in obtaining counseling for James. We see no evidence that this contention was made at the juvenile court. It is not supported by the record, the decision or the facts of the case. The court clearly states appellant had not been derelict in trying to help James. The court also noted that Dawn was not to be faulted for all the delay in arranging James' counseling. Mr. Panzer's intake report of petition itself, states "She has demonstrated an effort to pursue help for her son, and it is recognized that getting that help has been difficult in great part because of the lack of sufficient staff at Mental Health Services." Jurisdiction was not based, and could not be based, on dereliction in obtaining mental health services for James.

## III.

There is yet another, equally important reason for reversal in this case. It lies in the lack of any substantial evidence supporting the trial court's determination that the minor's home, at the time of the adjudication, was an unfit place.

The use of the present tense verb in 300(d)'s description of an "unfit place" indicates an intent that the unfitness exists at the time of the hearing; however, past events can aid in a determination of present fitness. (*In re Nicole B., supra,* 93 Cal.App.3d at p. 878; *In re Jennifer P.* (1985) 174 Cal.App.3d 322, 326 [219 Cal.Rptr. 909].) The act or acts of abuse do not in themselves provide a basis for juvenile court jurisdiction. There must be some reason to believe the acts may continue in the future. (*In re Jennifer P., supra,* 174 Cal.App.3d at p. 326.) If the mother is unwilling or unlikely to protect her children against the threat of similar molestation in the future, court supervision is necessary. (*Ibid.; In re Courtney S.* (1982) 130

---

[2]Parenthetically we observe that even if respondent's "custody or care" theory were correct, it has doubtful application to James in the case before us. Section 300(d) is designed to obtain jurisdiction over the abused or neglected child, not the abuser.

Cal.App.3d 567, 576 [181 Cal.Rptr. 843]; *In re Michael S.* (1981) 127 Cal.App.3d 348, 358-359 [179 Cal.Rptr. 546].)

While, admittedly, we are to indulge in all reasonable inferences to support the findings of the juvenile court (*In re Nicole B., supra,* 93 Cal.App.3d at p. 879), we must first find evidence from which an inference can be made and, if that can be done, the inference must be reasonable and not based on surmise or speculation. Here, Dawn had taken appropriate corrective measures to insure that the abusive conduct would not happen again and was told by the juvenile court judge that she had "done fine." There was no evidence of similar abusive conduct by James between discovery of what had transpired and the hearing. There was no evidence of any further threat of molestation to Janee and, indeed, the social worker, Mr. Panzer, admitted that there was no behavior exhibited by James which would lead him to believe there would be a recurrence.

We have no doubt that the Social Services Department pursued this petition out of genuine concern for James and Dawn. But labeling a home as unfit or a parent as neglectful is a strong indictment, which should be reserved for cases where a child's welfare is in doubt. To affix these labels to a parent or a home merely to provide impetus for counseling that was already in progress is clearly improper.

The order is reversed.

Rouse, Acting P. J., and Smith, J., concurred.