Filed 2/26/13  In re Eboni J. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re EBONI J., a Person Coming Under the Juvenile Court Law. | B242792 (Los Angeles County Super. Ct. No. CK50710) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>A.J.,<br><br>        Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County. Veronica S. McBeth, Judge.  Affirmed.

Thomas S. Szakall, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, Jeanette Cauble, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for Minor.

* * * * * *

The juvenile court sustained a Welfare and Institutions Code section 300, subdivision (b)[1] petition and declared the child Eboni J. a dependent of the court. Appellant A.J. (Mother) appeals, arguing that substantial evidence did not support the juvenile court's jurisdictional findings. We affirm. The evidence showed that Eboni remained at substantial risk of harm due to Mother's unresolved mental health issues and the unsafe condition of the home.

## FACTUAL AND PROCEDURAL BACKGROUND

### *Facts Leading to the Section 300 Petition.*

Mother had a 10-year history with the Los Angeles County Department of Children and Family Services (Department). In 2002, the child Emmanuel S. was declared a dependent under section 300, subdivision (b) due to Mother's medical neglect and lack of supervision. In 2005, the juvenile court sustained allegations of Mother's physical abuse against the child Ella S. And in 2007, the juvenile court sustained allegations that Mother's absence and/or incapacity placed the child E.J. at risk. Mother's parental rights were terminated as to all three children and they were all adopted.

When Eboni was born in June 2011, Mother tested positive for drugs and Eboni tested negative. The Department received a referral concerning Mother's drug use. Though Mother denied drug use (attributing the positive test to pain pills), she was compliant with the Department and accepted services. In March 2012, the Department received a referral alleging that Mother, together with Eboni's maternal aunt (Mercedes) and uncle (Anthony), used methamphetamine, and that Mother's home was in an unsanitary and unsafe condition because there was no gas service, no furniture, broken windows and dog feces. The referral also indicated that Eboni was neglected, lacking proper food, hygiene care and immunizations. Finally, the referral stated that Mother and

---

[1] Unless otherwise indicated, all further statutory references are to the Welfare and Institutions Code.

Mercedes were prostitutes, different men frequented the home at all hours and Mother permitted runaways to live in the home.

In an interview with a Department social worker, Mother denied that she or family members used drugs or worked as prostitutes. Though Mother admitted there was no gas in the home and a window was broken, the social worker observed that there was hot running water and adequate infant food, and that Eboni was well groomed and appeared to be in good health. Mother further admitted that her three other children were in foster care, that she had been arrested for check forgery and that she had been diagnosed as having bipolar disorder.

The social worker also interviewed Mercedes and Anthony. Mercedes denied drug use and prostitution, and explained that Mother moved into the apartment after another sister went to jail and was paying rent under the sister's name. The property was in foreclosure and the owner was not making any repairs. Anthony denied using or selling methamphetamine, but admitted to using marijuana outside Eboni's presence. The social worker also interviewed 16-year-old Ashley N., a runaway who stated that Mother was her godmother, and 17-year-old Levon M., who stated that Mother was his cousin. Both resided with Mother and denied there was drug use or prostitution in the home.

A different social worker made a follow-up visit later in March 2012. Mother was hostile and refused to provide the real name of an unidentified male visiting the home. She continued to deny any drug use and offered to drug test the next day. She also reported that she was not taking medication or receiving mental health services for her bipolar disorder. She added that Eboni's father, Clifton J. (Father) was not involved in Eboni's life. Father later denied paternity.

The social worker viewed the apartment, observing where Mother and Eboni slept on the floor. The carpet was dirty and the window remained broken. She saw Eboni had infant formula and clothing. Mother further reported that Eboni had an upcoming doctor's appointment for her nine-month shots. The social worker confirmed with the

Watts Health Center that Eboni was up to date on her immunizations; the center further reported that Eboni had a history of upper respiratory infections.

Though the social worker provided Mother and Mercedes with identification for drug testing, Mother never appeared for her test and Mercedes could not be found in the system.

On April 5, 2012, the juvenile court granted the Department's warrant requesting Eboni's removal. Mother and Eboni were not at home when the Department served the warrant the next day. Mercedes could not explain why she and Mother had not drug tested. The Department located Mother and Eboni at superior court where they had gone to attend Mother's sister's hearing. Mother became upset when officers took Eboni into custody and had to be physically restrained; Eboni slept through the removal. At the Department office, a social worker observed that Eboni had feces on her bottom but not in her diaper and that the clothes in her diaper bag were dirty and smelled of smoke. The Department assessed Eboni as being a victim of general neglect.

***Section 300 Petition, Adjudication and Disposition***.

The Department filed a section 300 petition on April 11, 2012, which alleged under subdivision (b) that Eboni was at risk for Mother's failure to protect. Specifically, paragraph b-1 alleged that Mother "has a history of mental and emotional problems, including a diagnosis of bipolar disorder, which renders the mother incapable of providing regular care and supervision of the child. The mother failed and refused to take the mother's psychotropic medication as prescribed. The child's sibling . . . received permanent placement services due to the mother's mental and emotional problems. Such mental and emotional condition on the part of the mother endangers the child's physical health and safety and places the child at risk of physical harm and damage." Paragraph b-2 alleged that Mother "established a filthy and unsanitary home for the child. The home had no gas, the carpet throughout the home was dirty and there was a missing window in the living room. Such filthy and unsanitary home environment established for the child by the mother endangers the child's physical health and safety and well being and places the child at risk of physical harm and damage."

4

At the detention hearing the same day, Mother blamed her failure to drug test on the social worker, first indicating that she did not know where to test and then adding that the social worker failed to set up an appointment. Mother requested Eboni's return. The juvenile court found a prima facie case for detaining Eboni, but ordered that she be returned if Mother submitted a negative drug test. It also ordered the Department to evaluate possible relative placements, set up a visitation schedule between Mother and Eboni, and provide Mother with referrals to an infant parenting program and housing programs.[2]

Mother tested clean for drugs on April 12, 2012, and Eboni was returned to Mother's custody on April 19, 2012. While in foster care, Eboni was bitten by the family's dog and required several stitches on her face. The Department interviewed Mother at her home one week later for its May 2012 jurisdiction/disposition report. With respect to allegations concerning her history of mental problems, Mother stated that she had been diagnosed with bipolar disorder in 1997; she was not taking medication and last saw her psychiatrist seven months ago. Mother stated that when she got in a "mood," Eboni's aunts and uncles were available to watch Eboni until she "calm[ed] down." She added that her sister is her primary source for childcare and that she, too, was mentally ill and receiving services.

During the interview, the social worker observed that the home's window remained broken, the carpet was dirty with a cigarette butt on the floor, and there were several hundred empty cans and bottles—including beer cans—in the patio area next to the dining room. Mother indicated there still was no gas. While speaking with Mother, the social worker also saw three men go into the bedroom with Mother's sister. Nonetheless, the social worker opined that the conditions of the home had not deteriorated and that with appropriate family preservation and mental health services, Mother could provide a safe and stable environment for Eboni.

---

[2] The juvenile court also declared Father to be Eboni's alleged father. He is not a party to this appeal.

At a May 14, 2012 hearing, the juvenile court set the matter for a contested adjudication hearing, but requested a report from the Department addressing a possible dismissal pursuant to section 301 or section 360, subdivision (b).

During May 2012, the Department conducted several unannounced visits to Mother's home. On May 3, 2012, after several unreturned telephone calls to Mother, the social worker arrived at Mother's home and saw an unidentified man and woman rummaging through some bags in the living room. They were initially unresponsive but then later informed the social worker that Mother was sleeping in the bedroom. Mother came to the bedroom door and stated it was not a good time for a Department visit. She added that she had not enrolled in any programs and had not made any effort to find different housing. The home remained unsanitary with the broken window and flies swarming around. Mother further indicated that while several of Eboni's stitches had been removed, one required the help of a specialist with whom she had missed her appointment.

During a May 9, 2012 visit, the social worker observed that the home remained in the same condition, with the addition of an overflowed sink and standing water on the kitchen floor. Mother still had not taken Eboni to have her remaining stitches removed. As of May 31, 2012, Mother still had not taken Eboni to have her stitches removed and the home remained unkempt, but Eboni was free from any signs of abuse. On June 6, 2012, Mother informed the social worker that Eboni's appointment for stitch removal had been rescheduled and that she had made a mental health appointment for herself scheduled for September 2012. On June 8, 2012, the social worker directed Mother to drug test. She also observed Eboni crawling on the dirty carpet in the home and saw cigarettes and cigarette butts throughout the house, including on the dining room table and window sills.

The Department recommended that Eboni be declared a dependent of the court and remain in her home with Mother, and that Mother receive family maintenance services, participate in individual counseling, comply with mental health recommendations and drug test weekly. It opined that dismissal with voluntary services

6

would not be appropriate because Mother failed to keep Eboni's medical appointments, address her own mental health and housing issues, and drug test.

At the June 14, 2012 adjudication, the juvenile court received the Department's prior reports into evidence and took judicial notice of the sustained petitions involving Eboni's siblings. Mother did not offer any evidence, but argued there was insufficient evidence to sustain the section 300 petition and sought its dismissal. The juvenile court sustained the petition as pled.[3] It stated that the child Eboni was at risk without Mother having some support, noting that Mother was not taking psychotropic medication or seeing a doctor, and that the condition of the home was not a safe situation for a child. The juvenile court declared Eboni a dependent of the court under section 300, subdivision (b) and ordered that she be placed in the home of Mother under Department supervision. Mother received family maintenance services including her participation in random weekly drug testing, parenting classes, individual counseling to address case issues and mental health counseling to include a psychiatric evaluation; her receipt of housing referrals; and directions to take her prescribed medication.

Mother timely appealed.

### DISCUSSION

Mother contends that substantial evidence did not support jurisdiction under section 300, subdivision (b). In reviewing the sufficiency of the evidence to support the juvenile court's jurisdictional findings, we determine whether there is any substantial

---

[3]     Though the minute order provides that only paragraph b-1 was sustained, the juvenile court did not make any distinction between paragraphs b-1 and b-2 at the hearing, stating that it "sustained the petition." Moreover, the petition was not interlineated to reflect the dismissal of paragraph b-2. Accordingly, we find that the reporter's transcript accurately reflects the juvenile court's adjudication. (See, e.g., *In re Merrick V.* (2004) 122 Cal.App.4th 235, 249 ["Conflicts between the reporter's and clerk's transcripts are generally presumed to be clerical in nature and are resolved in favor of the reporter's transcript unless the particular circumstances dictate otherwise"]; *In re Josue G.* (2003) 106 Cal.App.4th 725, 731, fn. 4 [conflicts in the record harmonized in favor of the reporter's transcript].)

7

evidence, contradicted or uncontradicted, to support the juvenile court's determination. (*In re E.B.* (2010) 184 Cal.App.4th 568, 574; *In re Tracy Z.* (1987) 195 Cal.App.3d 107, 113.) "[W]e draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193.)

Jurisdictional facts must be established by a preponderance of the evidence. (§ 335; *In re Sheila B.* (1993) 19 Cal.App.4th 187, 198.) Jurisdiction is appropriate under section 300, subdivision (b), where there is substantial evidence that "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child . . . ." Three elements must exist for a jurisdictional finding under section 300, subdivision (b): "'(1) neglectful conduct by the parent in one of the specified forms; (2) causation; and (3) "serious physical harm or illness" to the minor, or a "substantial risk" of such harm or illness.' [Citation.] 'The third element "effectively requires a showing that at the time of the jurisdiction hearing the child is at substantial risk of serious physical harm in the future (e.g., evidence showing a substantial risk that past physical harm will reoccur). [Citations.]"'" (*In re J.O.* (2009) 178 Cal.App.4th 139, 152; see also *In re S. O.* (2002) 103 Cal.App.4th 453, 461 ["'past conduct may be probative of current conditions' if there is reason to believe that the conduct will continue"].) Because section 300, subdivision (b) is designed to protect children who are at a risk of substantial harm, the juvenile court need not wait until a minor is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the minor. (See § 300.2; *In re Heather A., supra*, 52 Cal.App.4th at pp. 194–195; *In re Michael S.* (1981) 127 Cal.App.3d 348, 357–358, superseded by statute on another point as stated in *In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1665–1667.)

8

Here, there was substantial evidence to support jurisdiction under both paragraphs b-1 and b-2 of the petition.[4]  Paragraph b-1 alleged that Mother's history of mental health issues created a substantial risk of harm to Eboni.  (See § 300, subd. (b) [a child comes within the juvenile court's jurisdiction when the "child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of . . . the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness"].)  The evidence showed that Mother had a history of mental illness as well as a history of refusing to take her psychotropic medication, which on occasion led to bizarre behavior.  Approximately four years earlier, the juvenile court assumed jurisdiction over Eboni's sibling, E.J., finding that Mother's mental and emotional problems, and corresponding failure to take her prescribed medication, endangered E.J.'s health and safety.  In 2009, Mother conceded that she was not stable enough to care for E.J. and her parental rights were terminated.  Here again, Mother conceded that she was not seeing a psychiatrist regularly and was not taking any of her prescribed medication.  She further conceded that she was unable to care for Eboni when she got in a "mood," and relied on relatives to care for Eboni until she was able to calm down.

In light of this evidence, we find no merit to Mother's contention that the Department offered no evidence to show that Eboni was at risk from Mother's mental illness.  Mother's past failure to take medications or otherwise undertake efforts to treat her bipolar disorder, coupled with current failure to take prescribed medication or see a psychiatrist despite her admission that her mental condition rendered her periodically

---

[4]    We could affirm the jurisdiction order even if substantial evidence supported only one paragraph.  "When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence.  In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence."  (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451; accord, *In re Ashley B.* (2011) 202 Cal.App.4th 968, 979.)

incapable of providing care, supported the inference that Eboni remained at risk of suffering substantial harm due to Mother's uncontrolled mental illness. (See *In re Kristin H., supra,* 46 Cal.App.4th at p. 1653 [juvenile court found a mother's "refusal to take her medication thus could lead directly to further neglect of [the child's] care and in a larger sense illustrated the mother's unwillingness to accept and acknowledge how her mental problems contributed to her situation"].)

Paragraph b-2 alleged that Mother's "filthy and unsanitary home environment" placed Eboni at risk of harm and specifically referred to the home's lack of gas, dirty carpet and broken window. While "chronic messiness by itself" is not a basis for jurisdiction (*In re Paul E.* (1995) 39 Cal.App.4th 996, 1005), it is well established that a child falls within the ambit of section 300, subdivision (b), if the home where he or she resides is sufficiently filthy or unsanitary (*In re Jeannette S.* (1979) 94 Cal.App.3d 52, 58). Here, the condition of Mother's home at the time of jurisdiction was both unsanitary and dangerous, and posed a real threat to the health and safety of Eboni in the absence of Department intervention. The evidence showed that for three months there had been no gas in the home, the carpet was dirty with black spots and a window remained broken and missing. The evidence further showed that there were cigarette butts on a table and window sill, as well as a pile of over 100 cans and bottles in the patio area, and that Eboni was allowed to crawl around on the floor in the midst of the debris. Substantial evidence supported the juvenile court's finding that Eboni was at risk of substantial harm from the condition of her home.

In challenging this finding, Mother attempts to isolate each piece of evidence to argue that each condition, individually, did not create a risk of harm to Eboni. But in reviewing the jurisdictional findings for substantial evidence, "[w]e do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court. [Citations.] '"[T]he [appellate] court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence . . . such that a reasonable trier of fact could find [that the order is appropriate]."' [Citations.]" (*In re Matthew S.* (1988) 201 Cal.App.3d

10

315, 321; see also *In re Dakota H.* (2005) 132 Cal.App.4th 212, 228 ["We do not reweigh the evidence"].)

Here, the juvenile court considered the condition of the home as a whole—including the filth, broken window and lack of gas—to conclude it was not a safe situation for a child but could be made so with family preservation services. In view of the evidence supporting the juvenile court's findings, it is immaterial to our review that the initial allegations concerning Mother's drug use and dog feces in the home were not borne out by the Department's investigation.[5] Likewise, Mother's effort to explain the presence of bottles and cans as being collected to raise money for recycling—an explanation not offered as evidence below—fails to demonstrate that those items did not pose a safety risk to a crawling child. Further, while the presence of unidentified individuals in the home may not have posed a risk to Eboni standing alone, that multiple unknown individuals had access to Eboni sufficed as another factor demonstrating the unsafe condition of the home. Finally, while evidence that Mother delayed in having Eboni's stitches removed, by itself, may not have supported jurisdiction, it served as another example of Mother's failure to follow through with her obligations. The evidence, taken as a whole, adequately supported jurisdiction under paragraph b-2.

---

[5] Though the juvenile court mentioned the presence of feces in the home during the jurisdiction hearing, that condition was not alleged in the petition and therefore did not constitute part of the juvenile court's findings.

11

## DISPOSITION

The juvenile court's jurisdiction and disposition order is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, P. J.
                    BOREN

We concur:

_____, J.
        ASHMANN-GERST

_____, J.
        CHAVEZ