31 Cal.App.3d 112 (1973)
107 Cal. Rptr. 62
In re LUWANNA S. et al., Persons Coming Under the Juvenile Court Law.
COUNTY OF LOS ANGELES DEPARTMENT OF PUBLIC SOCIAL SERVICES, Plaintiff and Respondent,
v.
CONNIE G., Defendant and Appellant,
THE PEOPLE, Real Party in Interest and Respondent.
Docket No. 40732.
Court of Appeals of California, Second District, Division Five.
February 21, 1973.
*113 COUNSEL
Harvey E. Byron for Defendant and Appellant.
No appearance for Plaintiff and Respondent.
Joseph P. Busch, District Attorney, Harry Wood and Daniel L. Bershin, Deputy District Attorneys, for Real Party in Interest and Respondent.
*114 OPINION
COLE, J.[*]
Luwanna S., 8 years old, and her half-brother Sonney G., 4 years old, were the subjects of petitions filed in juvenile court pursuant to section 600 of the Welfare and Institutions Code. The petitions alleged that each of the children fell within subdivisions (a) and (b) of section 600.[1] As to each, the allegations were that the minor had no parent or guardian actually exercising proper and effective parental care or control (subd. (a)) and that the home of the minor was an unfit place by reason of the cruelty of the father and the neglect of the mother (subd. (b)). The subdivision (a) allegations as to Sonney were that he resides in his parent's home and on or about February 7, 1972, his father struck him "repeatedly with a wooden stick" causing several described wounds and that on several occasions during the preceding one and one-half years the father fired a loaded "BB" gun at the minor and had struck him with his hands, feet and a belt, causing bruises. As to subdivision (b) the allegations were the same.
The allegations of the petition with respect to Luwanna were the same except that as to the February 7, 1972, incident the conduct was alleged to have been directed to Sonney, instead of Luwanna.
The juvenile court sustained the allegations, adjudged the children to be dependent children of the court and ordered them removed from the custody of their mother, Mrs. G., and their father,[2] Frank G. Mrs. G. appeals.
(1) The sole claims on this appeal are that there was insufficient evidence to support the court's actions and that it abused its discretion in ordering the removal of the children. As to the sufficiency of the evidence, we are governed by the same rules that apply to all appeals: we must indulge in all reasonable inferences to support the findings of the juvenile court (In re Rita P., 12 Cal. App.3d 1057, 1060 [95 Cal. Rptr. 430]), and we must also "... view the record in the light most favorable to the orders of the juvenile court." (In re Biggs, 17 Cal. App.3d 337, 340 [94 Cal. Rptr. 519].)
*115 Evidence sufficient to support sustaining of the petitions is as follows: On February 7, 1972, Mrs. Sullivan saw Sonney's father chase him with a board, grab him, and hit him two times. The board appeared to break. (It was received in evidence and is described in respondent's brief as being "approximately 14 1/2 by 1 3/4 inches, by one inch; very old with cracks and pits, rough, dirty, and broken off at both ends.") Sonney cried. His father brought him into the house and stood him in the corner. The boy sniffled, and stopped crying. When the father left Mrs. Sullivan examined the boy. She saw a purpling area over the kidney and striations on the buttocks and leg. Two other ladies who were present saw two long swollen red marks on the buttocks. Mrs. Sullivan had seen other bruises on Sonney three or four days later.
That afternoon a social worker examined Sonney. His buttocks were deep red and looked as if they were turning purplish. He had a mark on his back over the kidney area, one on the back of a thigh, and older bruises. One of the ladies who had seen the boy earlier that day, also, now observed marks which she had not seen earlier. While waiting for the police to arrive, the father came and removed Sonney, who at first ran away from him. At that time he stated that he was not Sonney's father.
Another witness testified that seven months earlier she had been told by the mother that a black, blue, and red handprint on the boy's face had been caused when the father ran after him to spank him, and the boy ducked and was hit on the face instead. This same witness also testified that on one occasion Luwanna was standing in a corner for punishment for stealing and the father shot a B-B gun at trophies and other items on a shelf. The shots came within two or three feet of Luwanna's head and a plaster of paris bank was broken.
The above testimony is sufficient to support the petitions. While not all allegations of each petition were covered by the evidence, we cannot say that the court could not have drawn the inferences which it did. It is immaterial, both as to this aspect of the case, and as to the next point concerning the propriety of the disposition order, whether we would or would not have reached the same conclusion. It is true that there was no evidence that Luwanna was in any way beaten, and there was none that Sonney was fired at with a B-B gun. But the evidence which was presented, with the inferences to be drawn from it, meets the standards for sufficiency. In so holding we are aware of the strong policy of the law which favors keeping a family together and not removing a child from his parents. (In re Raya, 255 Cal. App.2d 260 [63 Cal. Rptr. 252].) The juvenile court *116 viewed the witnesses and may well have obtained far more insight into the situation then a cold record divulges.
The same thing can be said as to the disposition. The social report recommended the disposition adopted by the court. The father declined to testify at the disposition hearing, saying that he did not really know what to say. The mother accused Mrs. Sullivan of having lied and another witness attempted to attack Mrs. Sullivan's credibility. The report stated, without evidence to that effect, that there had been a pattern of neglect and abuse over a period of time. However, it also stated (and these are matters of official action as to which the court could properly take judicial notice) that the mother had been previously counselled as to the disciplining of Luwanna and that the father had two children by a different mother than Luwanna and Sonney who had been made dependent children at one point. It indicated that the father's attitude was such that the endangering of the children would continue to exist. Of great importance to the court's thinking could be the B-B episode. The father did not deny it; he simply said that the minors were not within range. The incident, in addition to its obvious potential for the infliction of emotional damage upon Luwanna, amply supports the disposition order. There is an inference that the conduct of the father may be repeated. We see no reason why the parents, particularly the father with whom the mother lives, should be permitted to continue a situation which easily could result in serious injury. Pursuant to section 726, subdivision (c), of the Welfare and Institutions Code the court found that the welfare of the minors required that their custody be taken from the parents. We cannot hold that the court abused its discretion.
The order is affirmed.
Stephens, Acting P.J., and Ashby, J., concurred.
NOTES
[*] Assigned by the Chairman of the Judicial Council.
[1] The petitions were filed in February 1972. At that time section 600 had been amended (Stats. 1971, ch. 1729, § 1) to add subdivision (d), which now contains substantially the same language as formerly appeared in subdivision (b). However, the 1971 amendments did not become effective until March 4, 1972. Therefore, respondent errs in suggesting that subdivision (d), and not subdivision (b) was invoked.
[2] Frank G. identified himself as the father during the juvenile court hearing, although testimony was introduced that at one time he said he was not the father.