Filed 8/29/13  In re Tyler L. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re TYLER L., a Person Coming Under the Juvenile Court Law. | D063597 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. EJ3612) |
| v. | |
| LISA L., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of San Diego County, Gary M. Bubis, Judge.  Affirmed.

William Hook, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel and Patrice Plattner-Grainger, Deputy County Counsel, for Plaintiff and Respondent.

Lisa L. appeals orders removing her son, Tyler L., from her custody, placing him with his father, Scott W., granting Scott legal and physical custody and terminating jurisdiction. She contends the evidence showed because she was fully engaged in services, Tyler would not be in danger if he remained in her care. She asserts the placement with Scott will cause psychological damage to Tyler and might put him in physical danger. We affirm the orders.

FACTUAL AND PROCEDURAL BACKGROUND

On October 26, 2012, the San Diego County Health and Human Services Agency (the Agency) petitioned on behalf of 10-year-old Tyler under Welfare and Institutions Code section 300, subdivisions (b) and (g),[1] alleging Lisa was not able to provide adequate care because she abused alcohol and was incarcerated. Three days earlier, Lisa had gone to a sheriff's station, saying her housemate was threatening her with a gun. She appeared to have been drinking. She drove erratically from the station and, when she was stopped, she yelled at Tyler to run. Tyler was taken into protective custody and detained in foster care.

Lisa identified Scott as Tyler's father. She said he lived in New York and occasionally sent child support for Tyler. Lisa's history showed earlier referrals for child

_____

[1]     Statutory references are to the Welfare and Institutions Code.

2

abuse or neglect dating to 2008. Some referrals concerned Lisa's drinking alcohol. Tyler had been a dependent child for a month in 2009 in San Bernardino County after Lisa was arrested for forgery and theft by fraud. Lisa's criminal history dated to 1986 and involved drinking and driving and public drunkenness. She denied having a drinking problem and said she did not drink and drive.

Scott said he had been paying child support of $60 each month and his relationship with Lisa was difficult because of her drinking. A maternal aunt stated she believed Lisa had anger and frustration problems, but she was a very good mother to Tyler. Scott lives in New York and is caring for the paternal grandmother. He admitted he and Lisa had a domestic violence incident many years ago when both were drinking. He said he now drinks only on weekends.

Lisa said she and Tyler have a wonderful relationship and he is a good and caring son. She said Scott had not been consistent with child support payments, and he was irresponsible, an alcoholic and a marijuana user. Tyler told the social worker he wants to live with Lisa. He said he loves Scott, but did not want to move to New York to live with him because it is too cold.

On November 8, 2012, a team decision meeting had to be terminated because Lisa became upset and started to yell. On November 20, the court found Scott is Tyler's presumed father and granted him unsupervised visitation.

Lisa and Tyler had appropriate, affectionate visits. Lisa said she was attending Alcoholics Anonymous (AA) meetings and would start an outpatient treatment program. The social worker noted Lisa had been leaving her angry, emotional telephone messages,

and the foster mother reported receiving harassing calls. There also was concern that Lisa was talking about the case with Tyler and telling him what to say.

Tyler began having telephone visits with Scott and appeared to enjoy them. The social worker in New York reported no concerns about Scott's ability to care for Tyler.

At the jurisdictional hearing on December 13, 2012, the parties stipulated that if Lisa were to testify, she would say that on October 23, 2012, her housemate threatened her with a gun, she called the sheriff's department and the housemate was arrested. She said she was arrested for driving while intoxicated, but believed it was entrapment. She denied having a substance abuse problem, and said she had secured housing, was attending AA meetings and court-ordered services in her criminal case and could not commit to the services recommended by the Agency. She said caring for Tyler has always been her first priority. The court found the allegations under section 300, subdivision (b) were true and ordered Lisa to meet with a substance abuse specialist and undergo a psychological evaluation. The court dismissed the allegation under section 300, subdivision (g).

The psychologist who evaluated Lisa diagnosed her with alcohol abuse and a personality disorder with antisocial, dependent and borderline characteristics. He recommended therapy and a formal alcohol treatment program with random testing.

Tyler had a very good visit with Scott in New York from December 22, 2012, to January 6, 2013. Tyler said if he cannot live with Lisa, he would like to live with Scott. After another visit with Scott in February, Tyler said he had a lot of fun and enjoyed the trip.

4

Lisa began participating in services. Her therapist said Lisa was motivated and doing well. She had been tested once for alcohol and tested clean.

At the disposition hearing in February 2013, Lisa's landlord provided stipulated testimony that Lisa was renting two rooms from him and Tyler was welcome to live there too. The social worker testified Lisa had been participating in reunification services and was attending a dual diagnosis program and AA meetings. She said Lisa had apologized for the way she had talked to her in the past, but she continued to be loud and emotional on the telephone.

Lisa testified she wants Tyler returned to her care. She said she was participating in substance abuse treatment, AA meetings and therapy, and had been sober since October 2012. She testified Scott is irresponsible, and abused alcohol and marijuana. Scott testified he was ready to take on the responsibilities of caring for Tyler. He was living with the paternal grandmother and caring for her. He said he did not want Lisa to be around his family but, if Tyler lived with him, he would agree to her having visits and would obtain therapy for Tyler if it were required. It was stipulated that if Tyler were to testify he would say his first choice is to live with Lisa, but he also wants to live with Scott because he does not get to see him very much.

After considering the evidence and argument by counsel, the court removed physical custody from Lisa, placed Tyler with Scott, granted legal and physical custody to Scott and supervised visits to Lisa, and terminated jurisdiction.

5

DISCUSSION

I

Lisa contends the court erred by removing Tyler from her custody. She argues she has taken great care of Tyler for 10 years, is fully engaged in services and has sufficient support, and her psychological evaluation shows she is capable of being a safe parent. She claims Tyler is able to set boundaries and wants to live with her, and the record indicates there are alternatives available that are less drastic than removal.

A reviewing court must uphold a juvenile court's findings and orders if they are supported by substantial evidence. (*In re Amos L.* (1981) 124 Cal.App.3d 1031, 1036-1037.) Determinations of credibility of witnesses and resolutions of conflicts in the evidence are for the trier of fact. (*In re Tanis H*. (1997) 59 Cal.App.4th 1218, 1226-1227.) "[W]e must indulge in all reasonable inferences to support the findings of the juvenile court [citation], and we must also ' . . . view the record in the light most favorable to the orders of the juvenile court.' [Citation.]" (*In re Luwanna S*. (1973) 31 Cal.App.3d 112, 114.) The appellant bears the burden to show the evidence is insufficient to support the court's findings. (*In re Geoffrey G*. (1979) 98 Cal.App.3d 412, 420.)

Section 361, subdivision (c)(1) provides a child may not be taken from the custody of his or her parents unless the juvenile court finds by clear and convincing evidence:

> "There is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody."

6

"The juvenile court has broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accordance with this discretion." (*In re Jose M*. (1988) 206 Cal.App.3d 1098, 1103-1104.) The focus of the dependency statutes is to prevent harm to the child. (*In re Jamie M*. (1982) 134 Cal.App.3d 530, 536.) The court is required to consider the parent's past conduct as well as present circumstances. (*In re Troy D*. (1989) 215 Cal.App.3d 889, 900.) When there has been a long history of substance abuse, a short period of sobriety does not indicate a child may be safely returned to the parent. (*In re Kimberly F*. (1997) 56 Cal.App.4th 519, 531, fn. 9.)

Lisa has not shown the court erred by removing Tyler from her custody. She had a long history of abusing alcohol as shown by her arrests for drunk driving and public drunkenness. Tyler was taken into protective custody after she drove erratically with him in a car after she drank alcohol. The psychologist who evaluated her said she showed poor judgment and insight and, to reduce the risk to Tyler, she needed to complete a substance abuse recovery program that included random drug testing. The social worker recommended that for his protection, Tyler be removed from Lisa's custody and placed with Scott. Substantial evidence supports the court's removal order.

## II

Lisa asserts the court erred by placing Tyler with Scott and awarding him sole legal and physical custody. She argues this placement will psychologically damage Tyler because it will curtail his contact with her, and it is unlikely that Scott will allow their

7

conjoint therapy to continue. She claims the placement may place Tyler in physical danger since Scott appears resistant to services, has no experience being a parent and was not sufficiently evaluated.

Section 361.2, subdivision (a) provides as follows:

> "When a court orders removal of a child pursuant to Section 361, the court shall first determine whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires to assume custody of the child. If that parent requests custody, the court shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child."

If the court places the child with the noncustodial parent, it may order the noncustodial parent to assume custody of the child, enter a custody order and terminate jurisdiction. (§ 361.2, subd. (b)(1).) Section 362.4 provides "[w]hen the court terminates its jurisdiction over a minor who has been adjudged a dependent . . . the juvenile court on its own motion, may issue . . . an order determining the custody of, or visitation with, the child." In making a custody order, the court considers the child's best interests. (*In re John W.* (1996) 41 Cal.App.4th 961, 973-974.) The juvenile court has broad discretion in making custody orders. (*Alicia B. v. Superior Court* (2004) 116 Cal.App.4th 856, 863.) A reviewing court will not reverse a custody order unless the juvenile court has " ' "exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination [citation]." ' " (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318.)

8

Lisa had not shown the court abused its discretion by awarding sole legal and physical custody to Scott. Lisa contends this placement will be detrimental to Tyler but offers little more than speculation and argument to support her position. Tyler had a successful two-week visit with Scott in New York in December 2012 and January 2013. They had another good visit in February 2013. The social worker in New York evaluated Scott and found no concerns in placing Tyler with him. The Agency social worker also noted no concerns. The social worker determined Scott did not require a parenting class or treatment, but provided him with a list of resources in his area. Scott has extended family support available, and he said he would be willing to provide therapy for Tyler if he were placed with him.

Lisa has not shown an abuse of the court's discretion.

## DISPOSITION

The orders are affirmed.

HALLER, J.

WE CONCUR:


BENKE, Acting P. J.


HUFFMAN, J.

9