Filed 2/28/14  In re Tyrone K. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re TYRONE K., JR., a Person Coming Under the Juvenile Court Law. | D064612 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | (Super. Ct. No. J518732) |
| Plaintiff and Respondent, | |
| v. | |
| L.E., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Cynthia Bashant, Judge.  Affirmed.

Rosemary Bishop, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Dana C. Shoffner, Deputy County Counsel, for Plaintiff and Respondent.

L.E. appeals a juvenile court order made at the jurisdictional and dispositional hearing concerning her son Tyrone K., Jr. She contends the court erred by finding it would be detrimental under Welfare and Institutions Code section 361.2, subdivision (a)[1] for Tyrone to be placed with her. She argues the finding is inappropriate, unnecessary and not supported by substantial evidence. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Tyrone was born in Wisconsin in 2004. His father, Tyrone K., Sr., (the father) and L.E. were awarded joint custody of him with L.E. having primary placement. The father moved to San Diego, California, while L.E. stayed in Wisconsin. Tyrone spent time with each parent, but during the two years before he was taken into protective custody, he had lived with the father in San Diego full time and had occasional visits with L.E. Tyrone had symptoms of attention deficit and hyperactivity disorder (ADHD) and oppositional defiant disorder (ODD) and had behavioral problems at school both when he lived with L.E. and when he lived with the father. In San Diego, he attended a special school for children with emotional disabilities and was under a psychiatrist's care.

On July 11, 2013, Tyrone told school officials the father had hit him with a belt. An examination revealed many looped bruises on Tyrone's chest, abdomen and thighs. The father admitted he had hit Tyrone because of his misbehavior at school. He said he had made Tyrone take off his clothes and stand in the middle of a room for 10 minutes awaiting his punishment.

---

[1]     Further statutory references are to the Welfare and Institutions Code.

The San Diego County Health and Human Services Agency (the Agency) petitioned on Tyrone's behalf under section 300, subdivision (a) on the basis of the father's physical discipline of him. At the detention hearing, the court took temporary emergency jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act.[2] It made a prima facie finding on the petition, denied L.E.'s request to detain Tyrone with her and detained him in out-of-home care.

The social worker reported the father had participated in voluntary services in 2012 based on his admission he had punished Tyrone by hitting him. L.E. said she talked with Tyrone several times each month. She said she knew the father spanked Tyrone, but she thought the last incident had been several months in the past, and she was not aware he had participated in voluntary services. Tyrone said L.E. also had lost her temper with him in the past and hit him with a belt, a shoe and a broom. L.E. admitted spanking Tyrone, but said she used only her open hand to do so. She said she had difficulty obtaining services for Tyrone when he lived with her because she did not have the appropriate paperwork and he was not on medication. She said she wanted services and resources to support Tyrone's placement with her.

Tyrone's school records showed he had significant behavioral problems in a school setting. He often had tantrums and had to be restrained. He cried, ran away, threw things and lay on the floor of the classroom to avoid doing class work. During the time he was detained at Polinsky Children's Center (Polinsky), he refused visits from the father, hung

_____

2      At the jurisdictional/dispositional hearing, the court indicated the Wisconsin court had agreed that California courts had jurisdiction over the case.

3

up when L.E. called and would not speak with the social worker. He was violent and aggressive toward staff, destroyed property and, although he sometimes did well, he needed constant redirection.

At the jurisdictional/dispositional hearing, the parents submitted to the allegations of the petition and the court found them to be true. L.E. said she was not requesting placement as a noncustodial parent under section 361.2 and argued it was not appropriate to find placement with her would be detrimental. She asked that the social worker have discretion to allow her short visits. County counsel requested the court find it would be detrimental to place Tyrone with L.E. because she had waivered on whether she wanted custody or not. The court declared Tyrone a dependent of the juvenile court, removed custody from the father, ordered services and visitation and ordered the Agency to initiate an evaluation for placement with L.E. under the Interstate Compact for the Placement of Children (ICPC). It found L.E. was the noncustodial parent and she was not requesting custody, but it would be detrimental to place Tyrone with her because he could not be kept safe without services and currently there were no services in place for L.E.

DISCUSSION

I

L.E. contends the court prejudicially erred by finding it would be detrimental to place Tyrone with her. She argues she did not request placement, and the finding of detriment was not necessary to protect Tyrone.

"The juvenile court has broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accordance with this

4

discretion." (*In re Jose M.* (1988) 206 Cal.App.3d 1098, 1103-1104.) The reviewing court will not reverse the court's order in the absence of a clear abuse of discretion. (*Id.* at p. 1104.)

"Section 361.2 addresses the situation of the noncustodial parent . . . ." (*In re Terry H.* (1994) 27 Cal.App.4th 1847, 1856.) Section 361.2, subdivision (a) provides:

> "When a court orders removal of a child pursuant to Section 361, the court shall first determine whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires to assume custody of the child. If that parent requests custody, the court shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child."

Although L.E.'s counsel stated at the jurisdictional/dispositional hearing that L.E. was not requesting custody, it is clear her ultimate goal was to have Tyrone placed in her home. Tyrone had lived with one parent and then the other throughout the eight years of his life. After he began living with father, he continued to have visits with L.E., and she said he was scheduled to visit her shortly after the incident which led to him being detained.

L.E. explained she had tried to obtain services for Tyrone in the past, and, after he was taken into protective custody, she had gone to her local child welfare office and was given a resource referral hotline number. She said she was willing to go back to obtain additional referrals and would take time off from her job to get him established with services. She told the social worker she would like a referral to a treatment center and the

5

appropriate documentation for her to obtain treatment for Tyrone and she was willing to participate in parenting classes and therapy.

L.E. had requested at the detention hearing on July 16 that Tyrone be detained with her, and the social worker reported that on July 25, she again asked if he could come with her. At the jurisdictional/dispositional hearing on August 6, L.E.'s counsel said L.E. was not requesting placement "at this time," but as county counsel pointed out she had "kind of fluctuated on when she wants custody and when she doesn't." Because L.E. had waivered as to whether she wanted Tyrone placed with her and her ultimate goal was to have placement, the court reasonably determined a detriment finding was required. The court did not find, as L.E. suggests, that it would be detrimental to place Tyrone with her based on an implied finding that because she was asking for reunification services, she was asking for custody. The court did not err by finding at the dispositional hearing that placement with her would be detrimental to Tyrone because services were not yet in place to protect his safety, protection, or physical or emotional well-being.

## II

L.E. contends substantial evidence does not support a finding by clear and convincing evidence that it would be detrimental to place Tyrone in her care.

The finding it would be detrimental to the child to place him or her with a noncustodial, nonoffending parent is made under the standard of by clear and convincing evidence. (*In re Marquis D.* (1995) 38 Cal.App.4th 1813, 1829.)

A reviewing court must uphold a juvenile court's findings and orders if they are supported by substantial evidence. (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 947.)

6

"[W]e must indulge in all reasonable inferences to support the findings of the juvenile court [citation], and we must also '. . . view the record in the light most favorable to the orders of the juvenile court.' " (*In re Luwanna S.* (1973) 31 Cal.App.3d 112, 114.) The appellant bears the burden to show the evidence is insufficient to support the court's findings and orders. (*In re Geoffrey G.* (1979) 98 Cal.App.3d 412, 420.)

L.E. has not sustained her burden to show a lack of substantial evidence. Clear and convincing evidence supports a finding it would be detrimental to place Tyrone with L.E.

Although the court did not expressly state the finding of detriment was based on clear and convincing evidence, it made the detriment finding immediately after finding under the clear and convincing standard that removal from the father's custody was necessary. It did not indicate it was making the finding of detriment under a lesser standard. We assume the court made the two findings under the same standard of by clear and convincing evidence.

Tyrone's severe behavioral problems began when he was a small child. In 2011 and 2012 school authorities noted he had significant problems every day, including not following his teacher's instructions, hitting staff and students, throwing objects, kicking and destroying property. In 2012, the school psychologist said he was a danger to himself and others. In the 2012-2013 school year, he at times had to be restrained. He showed aggression, especially toward female staff. At Polinsky, he continued to act violently and destroyed property.

7

L.E. had had problems with Tyrone when he was living with her. She said she needed services for him to live with her, but services were not in place at the time of the disposition hearing. It was appropriate for the court to order the Agency to initiate an investigation for placement with L.E. under the ICPC to allow the child welfare agency in Wisconsin to evaluate the circumstances and make appropriate referrals for services available to L.E.

*In re Patrick S.* (2013) 218 Cal.App.4th 1254 and *In re John M.* (2006) 141 Cal.App.4th 1564, cases from this court, are distinguishable. In *In re Patrick S.,* this court found there was not substantial evidence to support the juvenile court's order that it would be detrimental to a 14-year-old boy to place him with his father. (*Id.* at pp. 1262-1266.) The father had searched for his son for years, but the boy's mother, who suffered from mental illness, kept him from him. The father had no criminal or child protective services history, and the mother's accusation the father had sexually abused the child when he was a baby had been found to be unsubstantiated. The father and son had successful visits, and the father was arranging services and participating in a parenting class. But at the time of the disposition hearing, the boy did not want to move to the father's home, but to stay at his current high school. The boy had a history of emotional problems, and there was one documented incident of him running out of his classroom and becoming combative. His therapist diagnosed his mental health condition as adjustment disorder, unspecified. (*Id.* at pp. 1256-1260.)

Tyrone's emotional problems were much more extreme. He had symptoms of ADHD and ODD, attended a special school, had tantrums and repeatedly had to be

8

restrained. His behavioral problems had been severe when he lived with L.E., and there were reports that he had been exposed to domestic violence in her care. Further, he reported L.E. had lost her temper with him and hit him with a belt, a shoe and a broom, and she knew the father spanked him with a belt and that Tyrone was afraid of him. The therapist at Tyrone's school said the father's physical discipline had increased Tyrone's anxiety. Because Tyrone's problems were far more extreme and L.E. had had problems when caring for him in the past and had asked for help in securing services to help her provide a safe environment, the two cases are distinguishable.

Differences between this case and *In re John M., supra,* 141 Cal.App.4th 1564 are also apparent. In *In re John M.,* this court held the juvenile court had erred by finding it would be detrimental to place a 13-year-old child with his father out of state. The child had serious emotional problems and a history of being oppositional and aggressive. However, there was no information the father would not be able to meet his special needs. This court held the fact the child did not wish to move to his father's home, his lack of a relationship with the father and the court's lack of information about the father did not support a detriment finding. (*Id.* at pp. 1570-1571.) This contrasts with L.E.'s significant difficulties providing a safe home for Tyrone in the past and her requirement for services in order to do so. The cases are distinguishable.

Clear and convincing evidence supports the finding it would have been detrimental to Tyrone to place him with L.E. at the time of the disposition hearing because he could not be kept safe without services, and at that time there were no services in place.

9

## DISPOSITION

The order is affirmed.

BENKE, Acting P. J.

WE CONCUR:

NARES, J.

IRION, J.