Filed 7/10/14  T.D. v. Super. Ct. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| T.D. et al.,<br><br>　　　　Petitioners,<br><br>　　v.<br><br>THE SUPERIOR COURT OF SAN DIEGO COUNTY,<br><br>　　　　Respondent;<br><br>SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY et al.,<br><br>　　　　Real Parties in Interest. | D065644<br><br>(San Diego County<br>Super. Ct. No. EJ3555A-B) |

PROCEEDINGS for extraordinary relief after reference to a Welfare and Institutions Code section 366.26 hearing.  Gary M. Bubis, Judge.  Petitions denied; requests for stay denied.

Dependency Legal Group of San Diego and John P. McCurley for Petitioner T.D.

Dependency Legal Group of San Diego and Elizabeth A. Klippi for Petitioner To. D.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Emily K. Harlan, Deputy County Counsel, for Real Party in Interest San Diego County Health and Human Services Agency.

T.D. (the father) and To. D. (the mother) seek writ review of juvenile court orders terminating their reunification services regarding their daughters, Tyy. D. and Tye. D., and referring the matter to a Welfare and Institutions Code section 366.26 hearing. (All further statutory references are to the Welfare and Institutions Code.) The father contends substantial evidence does not support the court's finding that returning the children would create a substantial risk of detriment to them or that reasonable services were provided. He also asserts the court abused its discretion by not continuing the 18-month hearing. The mother joins in the father's petition and argues the court erred by finding reasonable services were provided, and the court abused its discretion by not extending services for six months. We deny the petitions.

FACTUAL AND PROCEDURAL BACKGROUND

On May 30, 2012, the San Diego County Health and Human Services Agency (the Agency) petitioned on behalf of three-year-old Tyy. and 10-month-old Tye. The petition regarding Tyy. alleged she had a broken arm for which the parents had failed and refused to provide treatment for nine days. The petition regarding Tye. alleged she suffered from a nonorganic failure to thrive and the parents did not provide adequate food. The allegation regarding Tye. was later dismissed. Both children and the father have osteogenesis imperfecta, a genetic disorder characterized by fragile bones that break easily. The children were detained in foster care. They began services, including at the San Diego Regional Center (Regional Center).

The mother said Tyy. broke her arm when the parents were arguing. She said the father had grabbed Tyy.'s stroller and swung it, causing Tyy. to fall. The mother noticed Tyy.'s arm was swollen and she could not move it, but the parents did not think it was broken, and Tyy. did not want to go to the doctor. The father said Tyy.'s arm broke when he threw his arms up in the air during an argument and accidentally hit the stroller. Police had intervened during the incident

2

and took the father to a hospital because he continued to yell. The mother said they had stopped giving Tye. her special formula because Tye. did not want it, and it was too expensive. The mother said she had not fed Tye. on the night of the incident, and they did not have any baby food, having left it behind when they were evicted from their motel room because of their loud arguing.

On June 20, 2012, the Agency filed amended petitions, alleging the father's mental illness and angry behavior had resulted in Tyy. falling out of her stroller and breaking her arm.

The parents were eligible for Regional Center services, but had not started services since moving to San Diego. The paternal grandmother (the grandmother) said the parents often ran out of money and needed support with basic life skills. She said the mother appeared depressed, had a history of paranoia and believed her children should not have to do things they did not want to do. The father reported he had been prescribed medication for bipolar disorder and depression. He had a history of mental illness and had not been taking his prescribed medications. A preliminary psychiatric evaluation diagnosed him with depression and chronic paranoid schizophrenia with medical noncompliance. A psychological evaluation reported he had mild mental retardation, fetal alcohol syndrome and head injury. The psychologist who evaluated him said, although the father's mental illness would not appear to prevent him from providing adequate care of his children, he tends to downplay his impediments, symptoms and temper problems and to minimize the children's challenges and not understand their needs. The psychologist who evaluated the mother diagnosed her with mood disorder and mild mental retardation. He recommended therapy, but noted her paranoia and poor insight and judgment could interfere with her ability to make progress.

3

At the jurisdictional and dispositional hearing on July 9, 2012, the court declared the children to be dependents, removed custody and placed them in foster care. The parents were provided services, including supervised visits.

For the six-month review hearing, the social worker reported the mother was at first reluctant to accept Regional Center services, but the parents then began participating in services provided through an Independent Living Skills (ILS) worker, including in-home parenting instruction. They also had therapy and supervised visitation. The children were doing well in their foster home.

At the six-month review hearing in February 2013, the court found the parents had made some progress. It continued services and continued the children in out-of-home care. The court denied a request for unsupervised visits.

For the 12-month review hearing, the social worker reported the children continued to do well in their foster home. They were receiving treatments to prevent bone loss. The parents started conjoint therapy, but they were inconsistent in meeting with their psychiatrist, tended to run out of medications and, although there was some improvement, continued to have loud arguments. They attended visits and some of the children's medical appointments.

At the contested 12-month review hearing on August 7, 2013, the court found reasonable services had been provided, and the parents had consistently and regularly contacted the children, made significant progress in services and shown the capacity to complete the objectives of their reunification plans. It continued services for another six months. This court dismissed the parents' appeals from the court's orders, finding the parents were not aggrieved by the ruling. (*In re T.D.* (Mar. 12, 2014, D064459) [nonpub. opn.].)

4

The social worker reported the parents had to move out of their apartment because there were reports of marijuana smoke coming from the apartment and possible drug trafficking by the father's brother, who was living with them. The social worker saw on the father's Facebook page a video of a person she believed to be the father smoking a bong. The person videotaping said "[the father's] first bong hit." The father denied smoking marijuana or that there was a video on Facebook. The parents moved to a group home, where they lived in separate rooms.

In September 2013, the parents completed a parenting course. The father attended many visits, but missed others and began missing therapy. The mother stopped therapy, and her therapist said the mother was ambivalent about her ability to care for the children and said they were a lot of work. The court-appointed special advocate for the children (CASA) reported during the visits she observed, the mother did not interact much with the children, but the father was sweet and attentive.

At the contested 18-month review hearing on March 21, 2014, the social worker testified the children have special needs, and the parents need help with daily life tasks and had problems maintaining stable housing even with the Regional Center's help. She was concerned they did not consistently take their medications or attend therapy, and they did not attend all visits or attend many of the children's medical appointments. She said there were reports the parents continued to have loud arguments.

The grandmother cited examples of times she believed the father had shown appropriate parenting skills and progress with anger management. She said she would oversee his care of the children if they were placed with him. The father testified about the children's diagnoses and what he had learned about their therapies and treatments. He said he had completed a parenting class and had resumed therapy.

5

After considering the evidence and argument by counsel, the court found returning the children to the parents care would create a substantial risk of detriment. It found the Agency had provided reasonable services, the mother had not made substantive progress, and the father had made good progress. It terminated services and set a section 366.26 hearing.

The father and the mother petitioned for review of the court's orders. (§ 366.26, subd. (*l*); Cal. Rules of Court, rule 8.452.) This court issued an order to show cause, the Agency responded and the parties waived oral argument.

## DISCUSSION

### I

The parents contend substantial evidence does not support the court's finding that reasonable reunification services were provided. They object to the fact they did not have unsupervised visits to show they could provide adequate care. The Agency asserts the parents waived their rights to make this contention because they did not raise the argument in juvenile court.

Even assuming the parents have preserved this issue for appeal, they have not shown a lack of reasonable services.

A reviewing court must uphold a juvenile court's findings and orders if they are supported by substantial evidence. (*In re Amos L.* (1981) 124 Cal.App.3d 1031, 1036-1037.) In determining the sufficiency of reunification services, the role of the appellate court is to decide "whether the record discloses substantial evidence which supports the juvenile court's finding that reasonable services were provided or offered." (*Angela S. v. Superior Court* (1995) 36 Cal.App.4th 758, 762.) The standard is not that the best possible services were provided, but that reasonable services were provided under the circumstances. (*In re Misako R.* (1991) 2

6

Cal.App.4th 538, 547.) The appellant bears the burden to show the evidence is insufficient to support the court's findings. (*In re Geoffrey G.* (1979) 98 Cal.App.3d 412, 420.)

The parents have not shown a lack of reasonable services by the fact they were not provided unsupervised visitation. Concerns remained about the father's ability to control his temper and about the parents' loud arguments. Before the dependency case began, the family had been the subject of two previous referrals involving domestic violence. In 2009, the referral alleged the father had slapped the mother in the face several times in front of Tyy. In 2011, there was a referral in which both parents admitted yelling at each other and the father admitted throwing things when he was upset. In the present case, the children became dependents when Tyy. was injured by the father hitting or swinging her stroller during an argument with the mother. The parents did not seek any medical attention for Tyy. for nine days. At the time, the family had been forced to leave their motel because of their arguing.

The Agency provided extensive services to help the parents reunify with their daughters, including therapy, Regional Center services with an ILS worker, in-home parenting instruction and help with housing, as well as visitation and advance notice of the children's medical and therapy appointments. The parents, however, were inconsistent in attending therapy and medical and psychiatry appointments, did not regularly take their medications, and did not always consistently attend visits and the children's medical and therapy appointments. They struggled to comply with Regional Center services. Although the father testified he had learned techniques to control his temper, the parents' loud arguments caused them to lose their housing and their progress in their in-home parenting class was inconsistent because they were repeatedly evicted. The concern the parents could not provide safe care for their young daughters in an unsupervised

7

setting is well supported. The parents have not shown a lack of reasonable reunification services by the fact they did not have unsupervised visits.

This case is clearly distinguishable from the situation in *Tracy J. v. Superior Court* (2012) 202 Cal.App.4th 1415, where the reviewing court held reasonable services had not been provided because services had not been tailored to the parents' disabilities, and they had not been informed of their child's medical appointments or given training on how to care for his asthma. (*Id.* at pp. 1425-1428.) In *Tracy J.,* the parents had some disabilities, but there were no allegations of domestic violence or abuse, and the parents were very cooperative with the Agency and worked well together as a team. (*Id.* at pp. 1419-1421, 1427.) Here, by contrast, the parents received therapy and other services customized for their disabilities as well as advance notice of the children's medical and therapy appointments. Concern remained about domestic violence and the father's ability to control his temper, and the parents were not fully cooperative with the services offered. The facts in *Tracy J.* are clearly distinguishable from the situation in this case. The parents have not shown a lack of substantial evidence to support the finding of reasonable services.

## II

The father maintains substantial evidence does not support the finding that it would detrimental to place the children in his care. He argues the fact he is living with the grandmother shows the children would be safe with him.

A reviewing court considers a finding of detriment under the substantial evidence test. (*In re Luke M.* (2003) 107 Cal.App.4th 1412, 1424-1426.) "[W]e must indulge in all reasonable inferences to support the findings of the juvenile court [citation], and we must also '. . . view the

record in the light most favorable to the orders of the juvenile court.' " (*In re Luwanna S.* (1973) 31 Cal.App.3d 112, 114.)

Section 366.22, subdivision (a), provides at an 18-month hearing:

> "[T]he court shall order the return of the child to the physical custody of his or her parent . . . unless the court finds, by a preponderance of the evidence, that the return of the child to his or her parent . . . would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child."

Substantial evidence was presented to show that returning the children to the father's custody would cause a substantial risk of detriment.

The grandmother was not able to provide a home for the children because her husband had a nonexemptible criminal history. She was not always forthcoming about the parents' problems. She had not told the social worker about an argument between the parents at her home and denied any argument had occurred. The grandmother said she knew about Tyy.'s injury at the beginning of the case, but she did not take Tyy. to a hospital when the mother did not do so. She also had not intervened when the parents did not give Tye. her special formula. During the dependency, she did not attend any of the children's medical appointments. The CASA expressed concern about the grandmother's ability to protect the children. Although the grandmother testified to her belief that the father could be a successful parent to the children, she stated she would "probably oversee mostly everything." Also, the parents had moved repeatedly during the months of the case and they had a history of living apart and then getting back together. There was no assurance the father would continue to live with the grandmother.

The father testified he was able to protect the children and understood how to care for them, but others questioned whether they would be safe in his care. The psychologist who evaluated him said the father had a tendency to minimize his symptoms and problems and

9

underestimate the needs of his children. During the few months before the hearing, the father had a significant lapse in visitation and stopped going to therapy. The CASA reported the father could discuss his children's needs, but it was "almost as if he was parroting what had been told to him." The social worker emphasized the risk to the children. They were physically fragile and required a secure, stable and safe environment. They attended a special school and needed to attend numerous medical and therapy appointments. The opinion of the social worker as to the risk of detriment was entitled to great weight.

Substantial evidence supports the court's finding there would be a substantial risk of detriment to the children if they were returned to the father's care.

III

The parents assert the court abused its discretion by not continuing the 18-month hearing. They have not shown an abuse of discretion.

The court may extend services beyond the 18-month hearing date only in an extraordinary case. (*Andrea L. v. Superior Court* (1998) 64 Cal.App.4th 1377, 1388.) "[T]he court shall give substantial weight to a minor's need for prompt resolution of his or her custody status . . . ." (§ 352, subd. (a).) "Continuances are discouraged [citation] and we reverse an order denying a continuance only on a showing of an abuse of discretion [citation]." (*In re Ninfa S.* (1998) 62 Cal.App.4th 808, 810-811.) " 'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. . . . ' " (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.)

In *In re Elizabeth R.* (1995) 35 Cal.App.4th 1774, 1787, the reviewing court held the juvenile court had discretion to extend services beyond the 18-month date to a mother who was hospitalized with mental illness and thus unable to participate in services. There was little information in the record about what the social services agency had done to address the mother's

10

special requirements. (*Id.* at p. 1791.) Also, the juvenile court had mistakenly believed it did not have authority to continue the case beyond the 18-month date. (*Id.* at p. 1799.)

Here, in contrast to the circumstances in *In re Elizabeth R.*, the parents were provided with extensive services tailored to deal with their disabilities and special needs throughout the dependency case. Also, the court was clearly aware of its authority to extend the hearing and commented it was up to the court's discretion whether to continue the case. The court did not abuse its discretion by denying the request to continue the hearing.

DISPOSITION

The petitions are denied.

McINTYRE, J.

WE CONCUR:

HUFFMAN, Acting P. J.

McDONALD, J.

11