Filed 11/24/14  In re D.Y. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re D.Y. et al., Persons Coming Under the Juvenile Court Law. | D066220 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. EJ3138B,C) |
| v. | |
| JEFF Y. et al., | |
| Defendants and Respondents; | |
| D.Y. et al., | |
| Appellants. | |

APPEAL from orders of the Superior Court of San Diego County, Gary Bubis, Judge.  Affirmed.

Terence M. Chucas, under appointment by the Court of Appeal, for Appellants.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Dana M. Shoffner, Deputy County Counsel, for Plaintiff and Respondent.

Elizabeth C. Alexander, under appointment by the Court of Appeal, for Defendant and Respondent Jeff Y.

Amy Z. Tobin, under appointment by the Court of Appeal, for Defendant ad and Respondent Heather Y.

D.Y. and B.Y. (the children) appeal orders terminating juvenile court jurisdiction over them and placing custody with their father, Jeff Y. They contend the evidence is insufficient to support the orders terminating jurisdiction. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On February 28, 2013, the San Diego County Health and Human Services Agency (the Agency) petitioned for juvenile court jurisdiction on behalf of three-year-old D.Y. and two-year-old B.Y. based on recurring domestic violence between the children's mother, Heather Y., and Jeff, and on Heather's substance abuse.[1] During the incident that gave rise to the petition, Heather and Jeff engaged in domestic violence while drinking alcohol. Heather had to be removed from the home in restraints. The family previously participated in family reunification services after a domestic violence incident in 2009, but successfully reunited, and the court terminated jurisdiction in 2011.

At the detention hearing on March 1, 2013, the court ordered the children placed with Jeff and Heather. On March 11, Heather tested positive for methamphetamine and voluntarily moved out of the home. The court found the allegations of the petition to be true, declared the children dependents, removed them from Heather, ordered them placed

---

[1] The Agency also petitioned on behalf of Heather's 10-year-old son, Z.T. He is not a subject of this appeal.

with Jeff, and ordered services, including supervised visits for Heather. Jeff's service plan required him to protect the children from emotional harm, stay sober and show his ability to live free from alcohol, participate in couples' counseling to address issues of conflict and learn better coping skills, and attend at least two Alcoholics Anonymous (AA) meetings each week, obtain a sponsor and work the 12-step program. In September, it ordered Heather not to reside in Jeff's home and that Jeff and Heather not have contact with each other.

Heather had unsupervised visits with D.Y. and B.Y. in May 2013, but after she had a positive drug test, visits were again supervised. By August she was allowed to have unsupervised visits again. The social worker referred Jeff and Heather to parenting classes and couples' counseling, but Jeff did not follow through with these services and there were allegations he was drinking and abusive to the children. He denied drinking, had a negative drug test, obtained an AA sponsor and said he was on step one of his AA program. His sponsor said he appeared to be doing well, but had trouble attending meetings because of issues with childcare.

At the review hearing on October 9, 2013, the court continued placement with Jeff. His updated case plan objectives were to protect the children from emotional harm and show he could live free from alcohol dependence. To attain these objectives he was required to attend counseling to address anger management and parenting issues, attend at least two AA meetings each week, obtain a sponsor and work the 12-step program, and submit to random drug tests. In November, at Jeff's request, the court modified the no contact order to allow Jeff and Heather to have peaceful contact.

3

The social worker reported Jeff was employed full time and Heather cared for the children at home or took them to childcare at her treatment program. She was living with Z.T. in a separate portion of Jeff's house. Jeff was attending counseling, but missed several sessions. He went to about one AA meeting each week and had attended a total of 22 AA meetings. The Court Appointed Special Advocate (CASA) for Z.T. reported that on the day he met Jeff he heard Jeff shouting at one of the girls, Jeff smelled of alcohol, and Z.T. appeared frightened and said Jeff was mean to him. Z.T. said he had seen empty alcohol bottles at the home in March, but had not seen Jeff drinking.

At the review hearing on May 19 and 22, 2014, the social worker testified Jeff was on step four of his AA program. She believed he had completed therapy, and there were no indications he had been drinking and no reports of new incidents of domestic violence. She voiced concern about the CASA's observations, but recommended the court continue D.Y. and B.Y.'s placement with Jeff and terminate jurisdiction.

Jeff testified he had not drunk alcohol since March 2013 despite reports to the contrary. Heather denied Jeff was drinking on the day he met the CASA. She said she believed she and Jeff had reached a point in their relationship at which they could amicably divorce.

Z.T.'s CASA testified that on the day he met Jeff in March 2014, Jeff smelled of alcohol and talked to one of the girls in a "high intense voice." He said he believed Z.T. was afraid of Jeff, and Heather had called him to express concern that Jeff would retaliate against Z.T. if he believed Z.T. had reported he was drinking.

4

After considering the evidence and argument by counsel, the court found reasonable services had been provided. It commented the case had begun because of domestic violence, and there was no longer a domestic violence issue because Heather and Jeff had separated. It said it did not believe Jeff's testimony about his sobriety, but no additional petition had been filed concerning his alcohol use. The court terminated jurisdiction over D.Y. and B.Y. and issued exit orders.

## DISCUSSION

The children contend the court erred by terminating jurisdiction. They argue the court considered only whether domestic violence between Jeff and Heather had continued, but not whether conditions still existed that would justify the initial exercise of jurisdiction. They maintain the evidence showed continued court supervision was required to protect them because Jeff continued to drink and then lied about it, and he had not complied with the AA attendance or counseling requirements of the family maintenance plan. They also point to his long criminal history and the earlier juvenile dependency proceedings involving the family.

Under Welfare and Institutions Code[2] section 364, subdivision (c), and California Rules of Court, rule 5.710(b)(1), if, after hearing evidence, the court determines a child may safely be returned to the parent, it terminates jurisdiction unless the social worker establishes that conditions still exist that require supervision. "The court shall terminate its jurisdiction unless the [social services agency] establishes by a preponderance of

---

[2] All further statutory references are to the Welfare and Institutions Code.

5

evidence that the conditions still exist which would justify initial assumption of jurisdiction under Section 300, or that those conditions are likely to exist if supervision is withdrawn."  (§ 364, subd. (c); *Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 304.)

A juvenile court's decision to terminate jurisdiction is reviewed under the substantial evidence test.  (*In re N.S.* (2002) 97 Cal.App.4th 167, 172.)  A reviewing court must uphold a juvenile court's findings and orders if they are supported by substantial evidence.  (*In re Amos L.* (1981) 124 Cal.App.3d 1031, 1036-1037.)  "[W]e must indulge in all reasonable inferences to support the findings of the juvenile court [citation], and we must also ' . . . view the record in the light most favorable to the orders of the juvenile court.' "  (*In re Luwanna S.* (1973) 31 Cal.App.3d 112, 114.)  The appellant bears the burden to show the evidence is insufficient to support the court's findings.  (*In re Geoffrey G.* (1979) 98 Cal.App.3d 412, 420.)

The children have not met their burden to show the evidence was insufficient to support the court's findings.  Jeff's updated case plan objectives required him to protect the children from emotional harm and to stay sober and show he could live free from dependence on alcohol.  In pursuit of these objectives, his responsibilities were to attend counseling to address anger management and parenting issues, attend at least two AA meetings each week, obtain a sponsor, work the 12-step program, and have random drug tests as required by the social worker.

Jeff participated in his case plan, but his compliance was less than perfect. He went to AA meetings and obtained a sponsor, but attended on average only about one

6

meeting each week. He did not provide monthly verification of his AA attendance. The minute order from the October 9, 2013, hearing reflects this was a requirement, but Jeff was not present in court at the time the order was made, his counsel said she did not inform him of this obligation, and the social worker did not appear to be aware of it. The social worker indicated she believed he attended when he could, but demands of work and childcare interfered with him attending more regularly. She stated Jeff was on step four of the AA program and had submitted to four random drug tests, all of which were negative. The social worker said she had contacted Jeff's sponsor twice and the sponsor reported Jeff was doing well. Jeff's sponsor reported, "[d]espite the extraordinary demands on his time and energy with [childcare] and a growing business, he has maintained contact with me and has attended meetings as adequate childcare has permitted. [¶] I feel that progress has been achieved and Jeff's attitude is very good."

The social worker reported Jeff had begun counseling on December 8, 2013. His therapist reported he attended consistently, but missed some therapy sessions because of work obligations. She said he made good progress with issues of taking care of himself and the children and had become more aware of the negative impacts codependency issues have had on his life. By March 2014, he had attended five sessions and the therapist reported he was making progress on being able to place the children's needs above his own. She said he was becoming more assertive with Heather and has a strong desire to do the right thing for himself and the children. Although Jeff was terminated from therapy in March, the social worker believed he had successfully completed therapy because of the therapist's reports of his good progress.

Jeff testified he had not drunk any alcohol since March 4, 2013. The juvenile court judge said he did not believe him, but also did not think Jeff had been "sitting there getting *drunk*" either. The court was justified in doubting Jeff's word. At trial, Jeff appeared to acknowledge he had been drinking with friends in September 2013, but then denied he was drinking. Z.T.'s CASA testified Jeff smelled of alcohol when they met in March 2014.

We would have greater confidence that there was no need for further court supervision had Jeff been more consistent in attending AA meetings and there were fewer questions about his sobriety. However, no evidence was presented at the hearing, as required for continued court supervision by section 364, subdivision (c), that conditions still existed to justify assumption of jurisdiction or that those conditions were likely to exist were supervision withdrawn. The children had been in Jeff's care since March 2, 2013, a period of 14 months by the time of the hearing. No further petitions had been filed regarding the family during that time. The children have not shown there is no substantial evidence to support the court's orders terminating juvenile court jurisdiction.

## DISPOSITION

The orders are affirmed.

McDONALD, J.

WE CONCUR:

NARES, Acting P. J.

AARON, J.

8